## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| Deana Vondriska, individually and on behalf of others similarly situated, | : | Case File No. 8:06-cv-1492-JDW-MAP |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| Premier Mortgage Funding, Inc., | : | |
| | : | |
| Defendant. | : | |


## PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE

### (ORAL ARGUMENT REQUESTED, ESTIMATED 30 MINUTES)


### INTRODUCTION

"Similarly situated" employees may bring "collective" actions in pursuit of unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  As acknowledged by the United States Supreme Court, collective actions are intended for both the benefit of employees who are afforded "the advantage of lower individual costs to vindicate rights by the pooling of resources," and the judicial system which "benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  Moreover, the Supreme Court has ruled that to serve the "broad remedial purpose" of the FLSA, and further the "wisdom and necessity" of judicial intervention,

courts can order notice to other potential similarly situated employees of the opportunity to "opt in" the case.  Id. at 171, 173.

Following this precedent, Plaintiff Deana Vondriska seeks "conditional certification" and judicial notice to the class of all loan officers who were unlawfully denied overtime pay while working for Defendant during the last three years.[1]  Plaintiff's motion should be granted because she easily meets the "lenient standard" applied by the Eleventh Circuit at the judicial notice stage.  See Hipp v. Liberty Nat'l Life Ins., 252 F.3d 1208, 1216-19 (11th Cir. 2001).

### SUMMARY OF RELEVANT FACTS

**A.  The Parties and Procedural History.**

Defendant Premier Mortgage Funding, Inc. ("Premier" or "Defendant") is a national mortgage lender with approximately 500 affiliate branch offices nationwide.[2] Defendant's corporate headquarters is located in Clearwater, Florida.[3]  On August 14, 2006, Plaintiff Deana Vondriska filed a Complaint against Premier, on behalf of herself and all similarly situated employees, alleging minimum wage and overtime violations of the Fair Labor Standards Act.[4]  Ms. Vondriska worked as loan officer in Defendant's Middlebrook, Ohio branch office.[5]  Currently, she is joined in the lawsuit by approximately forty-eight other current and former loan officers of Defendant who have

---

[1] Plaintiff's Proposed Notice is attached as Exhibit A to the Affidavit of Rachhana T. Srey ("Srey Aff.").
[2] A true and correct copy of printouts from Defendant's website, http://www.pmtgf.com (last visited Nov. 21, 2006) is attached as Exhibit B.
[3] Id.
[4] See Compl.
[5] Ex. C, Vondriska Decl. ¶ 2.

joined this case as "opt-in" Plaintiffs.[6]  These Plaintiffs worked in Defendant's various branch offices located throughout the United States including branch offices in Alabama, Arizona, Arkansas, California, Colorado, Delaware, Florida, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Missouri, North Carolina, Ohio, Pennsylvania, and Texas.[7]  In support of this motion, Plaintiff has obtained nineteen declarations from other opt-in Plaintiffs confirming that they performed the same job duties and were subject to the same unlawful compensation plan.[8]

**B.      Plaintiff and the Putative Class Members Share the Same Job Duties and are Commonly Classified as "Exempt" and Denied Overtime Pay.**

Regardless of their location, all loan officers perform the same job duties.  They spend a majority of their working day selling loans within Defendant's branch office.[9]  Defendant provides each of its loan officers with "free leads" each month.[10]    A loan officer's job duty consists of cold-calling these prospective customers, attempting to sell loans to these customers, and completing loan applications.[11]  Defendant's loan officers are required to sell loans according to Defendant's guidelines and procedures.[12]

---

[6] Srey Aff. ¶ 5.
[7] Id.
[8] See Ex. C.
[9] Ex. C, Bruce Decl.  ¶ 5; Burgos Decl. ¶ 5; Cobb Decl. ¶ 2; Curry Decl. ¶ 5; Hammond Decl. ¶ 5; Hatchett Decl. ¶ 5; Kephart Decl. ¶ 5; Pendelton Decl. ¶ 5; Picard Decl. ¶ 5; Putnam Decl. ¶ 5; Schuster Decl. ¶ 5; Smith Decl. ¶ 5; Steinfurth Decl. ¶ 5; Tucker Decl. Decl. ¶ 5; Vanterpool Decl. ¶ 5; Vondriska Decl. ¶ 5; Werner Decl. ¶ 5; Wilcombe Decl. ¶ 5; Williams Decl. ¶ 5.
[10] See Ex. B.
[11] See Ex. C, Bruce Decl. ¶ 2; Burgos Decl. ¶ 2; Cobb Decl. ¶ 2; Curry Decl. ¶ 2; Hammond Decl. ¶ 2; Hatchett Decl. ¶ 2; Kephart Decl. ¶ 2; Pendelton Decl. ¶ 2; Picard Decl. ¶ 2; Putnam Decl. ¶ 2; Schuster Decl. ¶ 2; Smith Decl. ¶ 2; Steinfurth Decl. ¶ 2; Tucker Decl. Decl. ¶ 2; Vanterpool Decl. ¶ 2; Vondriska Decl. ¶ 2; Werner Decl. ¶ 2; Wilcombe Decl. ¶ 2; Williams Decl. ¶ 2.
[12] Ex. C, Bruce Decl. ¶ 5; Burgos Decl. ¶ 5; Cobb Decl. ¶ 2; Curry Decl. ¶ 5; Hammond Decl. ¶ 5; Hatchett Decl. ¶ 5; Kephart Decl. ¶ 5; Pendelton Decl. ¶ 5; Picard Decl. ¶ 5; Putnam Decl. ¶ 5; Schuster Decl. ¶ 5; Smith Decl. ¶ 5; Steinfurth Decl. ¶ 5; Tucker Decl. Decl. ¶ 5; Vanterpool Decl. ¶ 5; Vondriska Decl. ¶ 5; Werner Decl. ¶ 5; Wilcombe Decl. ¶ 5; Williams Decl. ¶ 5.

Plaintiff and the putative class members all worked overtime hours within the statutory period without receiving any overtime compensation.[13] Despite working these long hours, Defendant did not keep accurate record of the number of hours worked by Plaintiff and the putative class members.[14] Plaintiff and the opt-in Plaintiffs each worked with other loan officers who worked over forty hours a week without overtime compensation.[15]

No loan officer received overtime compensation because Defendant treats all loan officers the same by classifying them as "exempt" from the overtime and minimum wage requirements of the FLSA.[16] Defendant compensates each loan officer in the same manner, paying its loan officers a commission based on the number and dollar value of the loans the loan officer closed within a pay period.[17]

## LOCAL RULE 3.1(g) CERTIFICATION

On October 31, 2006, Plaintiff's counsel and Defendant's counsel met and conferred regarding the case management report and whether Defendants would agree to

---

[13] Ex. C, Bruce Decl. ¶ 3; Burgos Decl. ¶ 3; Cobb Decl. ¶ 3; Curry Decl. ¶ 3; Hammond Decl. ¶ 3; Hatchett Decl. ¶ 3; Kephart Decl. ¶ 3; Pendelton Decl. ¶ 3; Picard Decl. ¶ 3; Putnam Decl. ¶ 3; Schuster Decl. ¶ 3; Smith Decl. ¶ 3; Steinfurth Decl. ¶ 3; Tucker Decl. Decl. ¶ 3; Vanterpool Decl. ¶ 3; Vondriska Decl. ¶ 3; Werner Decl. ¶ 3; Wilcombe Decl. ¶ 3.

[14] Ex. C, Bruce Decl. ¶ 7; Burgos Decl. ¶ 7; Cobb Decl. ¶ 7; Curry Decl. ¶ 7; Hammond Decl. ¶ 7; Hatchett Decl. ¶ 7; Kephart Decl. ¶ 7; Pendelton Decl. ¶ 7; Picard Decl. ¶ 7; Putnam Decl. ¶ 7; Schuster Decl. ¶ 7; Smith Decl. ¶ 7; Steinfurth Decl. ¶ 7; Tucker Decl. Decl. ¶ 7; Vanterpool Decl. ¶ 7; Vondriska Decl. ¶ 7; Werner Decl. ¶ 7; Wilcombe Decl. ¶ 7; Williams Decl. ¶ 7.

[15] Ex. C, Bruce Decl. ¶ 4; Burgos Decl. ¶ 4; Cobb Decl. ¶ 4; Curry Decl. ¶ 4; Hammond Decl. ¶ 4; Hatchett Decl. ¶ 4; Kephart Decl. ¶ 4; Pendelton Decl. ¶ 4; Picard Decl. ¶ 4; Putnam Decl. ¶ 4; Schuster Decl. ¶ 4; Smith Decl. ¶ 4; Steinfurth Decl. ¶ 4; Tucker Decl. Decl. ¶ 4; Vanterpool Decl. ¶4; Vondriska Decl. ¶ 4; Werner Decl. ¶ 4; Wilcombe Decl. ¶ 4; Williams Decl. ¶ 4.

[16] See Def's Answer .

[17] Ex. C, Bruce Decl. ¶ 6; Burgos Decl. ¶ 6; Cobb Decl. ¶ 6; Curry Decl. ¶ 6; Hammond Decl. ¶ 6; Hatchett Decl. ¶ 6; Kephart Decl. ¶ 6; Pendelton Decl. ¶ 6; Picard Decl. ¶ 6; Putnam Decl. ¶ 6; Schuster Decl. ¶ 6; Smith Decl. ¶ 6; Steinfurth Decl. ¶ 6; Tucker Decl. Decl. ¶ 6; Vanterpool Decl. ¶ 6; Vondriska Decl. ¶ 6; Werner Decl. ¶ 6; Wilcombe Decl. ¶ 6; Williams Decl. ¶ 6.

conditionally certify the case for purposes of notice and discovery.  Defendant's counsel

would not agree and therefore Plaintiff is before this Court with her motion.[18]

## ARGUMENT

## I.  CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE.

Plaintiff seeks conditional class certification and judicial notice in this collective

action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all loan officers who

worked for Defendant nationwide.   In cases such as this, the district court has

discretionary authority to authorize judicial notice to potential class members to inform

them of the action and give them an opportunity to participate by opting in.  Hoffmann-

La Roche, 93 U.S. at 169-70.[19]

In Hoffmann-La Roche, the Supreme Court identified the main benefits of a

collective action under section 216(b): "A collective action allows . . . plaintiffs the

advantage of lower individual costs to vindicate rights by the pooling of resources.  The

judicial system benefits by efficient resolution in one proceeding of common issues of

law and fact arising from the same alleged . . . activity."  Id. at 170.  Ultimately, the

purpose of judicial notice is to give employees accurate and timely notice concerning the

pendency of the collective action so they can make an informed decision about whether

to participate.  Id.  In a putative FLSA collective action, the "plaintiffs have the burden of

demonstrating a reasonable basis for crediting their assertions that aggrieved individuals

exist[] in the broad class that they proposed[]."  Brooks v. Bellsouth Telecom., 164

---

[18] Srey Aff. ¶ 4.
[19] The plaintiff in Hoffmann-La Roche brought an age discrimination case under the Age Discrimination in Employment Act that incorporates the enforcement provisions of the Fair Labor Standards Act.

F.R.D. 561, 568 (N.D. Ala. 1995) (quoting <u>Haynes v. Singer Co.</u>, 696 F.2d 884, 887 (11th Cir. 983)).

A.      **Courts in Eleventh Circuit Follow the *Ad Hoc* Two-Step Approach in Certifying FLSA Collective Actions.**

Like many others, the Eleventh Circuit follows the body of case law that has adopted an *ad hoc* two-step approach in determining whether a case should be certified as a collective action under section 216(b).  <u>See</u> <u>Hipp</u>, 252 F.3d at 1216-19; <u>Cameron-Grant v. Maxim Healthcare Serv., Inc.</u>, 347 F.3d 1240, 1243 (11th Cir. 2003) (applying two-stage <u>Hipp</u> analysis to an FLSA case).  At the first stage, the Court determines whether a collective action should be certified for the purposes of sending judicial notice and conducting discovery.  <u>Hipp</u>, 252 F.3d at 1217-19.  Because the court has minimal evidence at the first stage, the "similarly situated" determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. <u>See</u> <u>Pendelbury v. Starbucks Coffee Co.</u>, 2005 WL 84500, *3 (S. D. Fla. Jan. 3, 2005) (citing <u>Hipp</u>, 252 F.3d at 1218).[20]  Moreover, allowing plaintiffs and the putative class members to first proceed through notice and discovery is contemplated by the two tier approach.   <u>See</u> <u>Leuthold v. Destination Am.</u>, 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("The two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class.  This is evident from the methods usually employed to decide the issues raised by the two tiers.").

Once discovery is complete and the case is ready for trial, the Court makes a second determination of the similarly situated question, usually precipitated by the

_____

[20] A true and correct copy of all unpublished decisions are attached as Ex. D to Srey Aff.

defendant's motion for "decertification."  Hipp, 252 F. 3d at 1218.  At the stricter second stage, the court has much more information on which to base its decision, making a factual determination based on the complete record.  Id.

    The Eleventh Circuit's guidance on this similarly situated issue is clear: conditional class certification may be granted at the first stage of a two-stage process, if the pleadings and declarations when viewed under a fairly lenient standard demonstrate that there are others who are "similarly situated" and who may desire to "opt-in" to the case.  See Hipp, 252 F.3d at 1218; Cameron-Grant, 327 F.3d at 1243; Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Further, Plaintiff need only show that her position as a loan officer is similar, not identical, to the other loan officers located around the country. Id. at 1096; (quoting Sperling v. Hoffmann-La Roche, 118 F.R.D. 392, 407 (D.N.J. 1988)); see also Hipp, 252 F.3d at 1217.

    While Plaintiff has this burden, her burden is "not heavy," and may be met by making substantial class-wide allegations, "that is, detailed allegations supported by affidavits which successfully engage [d]efendant's affidavits to the contrary."  Id. at 1096-97 (internal quotations omitted); Hipp, 252 F.3d at 1218-19.  Further, "courts have held that Plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  Kreher v. City of Atlanta, 2006 WL 739572, at *3 (N.D. Ga. Mar. 20, 2006) (citing Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); see also Thiebes v. Wal-Mart Stores, Inc., 1999 WL 1081357, at *2 (D. Or. Dec.

1, 1999) (plaintiffs need only some factual nexus that they and the putative class were victims of a common policy or plan that violated the FLSA).

Plaintiff is joined in this case by forty-eight other loan officers who have filed consent to join forms with this Court.  By filing consent to join forms, these individuals have informed Defendant and the Court of their desire to opt in to this putative collective action.  Moreover, nineteen of these opt-in Plaintiffs representing fourteen different branches in eight states have submitted declarations in support of Plaintiff's motion, confirming their desire to opt in to this lawsuit, and the fact that they are similarly situated to Plaintiff Vondriska.  For example, like Plaintiff, all loan officers employed by Defendant share the same job requirements as they are all required to spend the majority working day following up on Defendant's leads by cold-calling prospective customers in hopes of selling them a loan.  Much of a loan officers time is spent on the phone either trying to sell the loan or completing the loan application.

Moreover, Plaintiff and the putative class members all worked in excess of forty hours a week during weeks within the statutory period.  Defendant, however, failed to keep accurate record of any of the hours worked by Plaintiff or the putative class members.  Finally, while Defendant's loan officers worked long hours for Defendant, none of them were paid overtime compensation for any hours beyond forty because Defendant has a company-wide policy of classifying its loan officers "exempt" from the FLSA's minimum wage and overtime requirements.

At this early stage of the litigation, through the allegations in her Complaint and the nineteen supporting declarations, Plaintiff has clearly provided sufficient basis for the

Court to conclude that notice of this collective action should be sent to the putative class.[21] See Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (holding plaintiffs met burden for conditional certification and notice through seven affidavits demonstrating a "reasonable basis" for their claims of class-wide violations); Guerra v. Big Johnson Concrete Pumping, Inc., No. 05-14237, 2006 WL 2290512, at *3-4 (S.D. Fla. May 17, 2006) (holding that two affidavits constituted a "rudimentary showing of commonality" sufficient for conditional certification and judicial notice); Pendelbury, 2005 WL 84500, at *4 (holding that the allegations in the plaintiffs' complaint and declarations of four former store managers sufficient to meet lenient standard); see also Harper v. Lovett's Buffet, 185 F.R.D. 358, 362-64 (M.D. Ala. 1999) (conditionally certifying a class based on fifteen affidavits).

**B.    Factors Not Considered By the Court When Conducting the First-Stage "Similarly Situated" Analysis.**

To defend Plaintiff's motion, defendants often raise several issues that are not factors a Court should consider at the notice stage.

**1.    The "merits" of the claim are not considered.**

At this "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." See Kreher v. City of Atlanta, 2006 WL 7398272, at *4 (N.D. Ga. Mar. 20, 2006) (citing Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The

---

[21] Other courts have also found plaintiffs to be "similarly situated" where the plaintiffs performed the same tasks, under the same conditions, and were compensated in the same manner. See, e.g., Champneys v. Ferguson Enterprises, Inc., No. IP 02-535-C, 2003 WL 1562219, at *6 (S.D. Ind. Mar. 11, 2003) (granting conditional certification and notice and finding plaintiffs similarly situated where they performed the same tasks, under the same conditions, and were compensated in the same manner.)

focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated) and Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff . . .."); see also Scott, 2006 WL 1209813, at *3 (refusing to examine the merits of the plaintiffs' claims at stage one).  In granting the plaintiffs' motion for conditional class certification, the Kreher court concluded that too high a burden would be placed on the plaintiffs at the preliminary notice stage if they were required to submit evidence of a highly particularized nature, as the defendant suggested.  Kreher, 2006 WL 7398272, at * 4.  As such, Kreher concluded that although the plaintiffs' declarations lacked some details, they established the existence of other employee employed in similar positions and subject to similar policies, warranting the court to grant the plaintiffs' motion under the "fairly lenient standard" applied in the Eleventh Circuit.  Id. at *4.

### 2.     Courts Do Not Consider the Need for Discovery.

This Circuit and the district courts in this circuit have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. See Grayson, 79 F. 3d at 1099 (holding that a district court *may*, but its not required to hold an evidentiary hearing prior to making its section 216(b) particularly where the defendant's rights are not affected substantially) (emphasis added in original); Lloredo v. Radioshack Corp., 2005 WL 1156030, at *1 (S. D. Fla. May 12, 2005) (refusing to

examine discovery in making its first stage similarly situated determination); <u>see also</u> <u>Harrison v. Enterprise Rent-A-Car Co.</u>, 1998 U.S. Dist. LEXIS 13131, at *13 (July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all, "similarly situated" does not defeat conditional class certification); <u>Schwed v. Gen. Elec. Co.</u>, 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

An examination of discovery is not appropriate because at this stage the Court is not making a *factual determination* of the "similarly situated" question.  <u>See</u> <u>Pendelbury</u>, at *3 (stating that a factual determination of the similarly situated question is not appropriate at this time because of the early stages of the litigation); <u>Brown v. Money</u> <u>Tree Mortgage, Inc.</u>, 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); <u>Goldman v. Radioshack Corp.</u>, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations.   <u>See</u> <u>Scott v. Heartland Home</u> <u>Finance</u>, 2006 WL 1209813, at *3 (N. D. Ga. May 3, 2006) (citing <u>Severtson v. Phillips</u>

Beverage Co., 141 F.R.D 276, 279 (D. Minn. 1992)); Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice."). In Scott, the court held that it was not appropriate for the court to address the merits of plaintiffs' claims or weigh evidence and thus refused to consider the defendant's arguments regarding the variation in specific job duties, locations, working hours, or the availability of various exemptions. 2006, WL 1209813, at *3; (citing Pendelbury, 2005 WL 82500, at *3 (factual matters regarding the applicability of exemptions to employees not appropriate at notice stage); Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000) ("[V]ariations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective class to the extent that it defeats the primary objectives of a section 216(b) action.").

Through the allegations in her complaint, and the declarations submitted to this Court, Plaintiff has provided sufficient evidence to warrant notice of this lawsuit be sent to all other loan officers who work/worked for Defendant around the country. Because the "similarly situated" determination at the notice stage is preliminary, Defendant is not prejudiced because it can later argue that Plaintiff and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial. Plaintiffs' motion should be granted.

### 3.   The standards for Rule 23 class certification and Rule 20(a) joinder are not applied.

The standard for class certification under Federal Rule of Civil Procedure 23 is not considered in an FLSA collective action. Grayson, 79 F.3d at 1096, n. 12. Nor is Rule 20(a) joinder considered. Id. at 1096. The "similarly situated" requirement of the

FLSA is considerably "more elastic and less stringent" than joinder or Rule 23 class actions.  Stone v. First Union Corp., 203 F.R.D. 532, 540 (S.D. Fla. 2001).  In fact, unlike Rule 23, section 216(b) requires no showing of numerosity, typicality, commonality, or representativeness.  Grayson, 79 F.3d at 1096.  Accordingly, under section 216(b), "not *all* questions of law or fact must be common; rather, it is enough if *some* questions of law or fact are common to all parties, even if such questions do not predominate."  Stone, 203 F.R.D. at 541 (emphasis in original).

   **4.   Plaintiff's informal efforts in providing notice are not considered.**

   Informal efforts by Plaintiff and her counsel to provide notice to the potential opt-ins through advertisement letters or other means are not factors to consider in determining whether to approve court-authorized notice.  This is because pre-certification communications such as Plaintiff's counsel's advertisement letters are constitutionally protected speech.  See Shapero v. Kentucky Bar Ass'n, 486 U.S. 466 (1988); see also In re Cavucci, No. 99-11704-J, at *3 (11th Cir. July 28, 1999) (holding that the plaintiffs were not required to seek court approval before contacting the potential members of an FLSA collective action because "if the plaintiffs wish to contact potential collective action members without the district court's intervention, they are free to do so").[22] Moreover, disputes over the content of such pre-notice communications are another reason identified by the Supreme Court in Hoffmann-La Roche justifying judicial notice in FLSA collective actions.  Hoffmann-La Roche, 493 U.S. at 172 (the parties' dispute

---

[22] A true and correct copy of In re Cavucci is attached as Ex. E to Srey Aff.

concerning 600 letters sent by Plaintiffs prior to seeking judicial notice "illustrates the propriety, if not the necessity, for court intervention in the notice process.").

### C.     Plaintiff's Case is Appropriate for Judicial Notice.

The United States Supreme Court gave district courts the authority to manage the process of joining multiple parties, including authority to consider a motion for collective action certification.  See Hoffmann-La Roche, 493 U.S. 165 (1989).  The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. at 170. District courts are encouraged to become involved in the notice process early to insure "timely, accurate, and informative" notice and to help maintain control of the litigation. Id. at 171-72.

Although the Supreme Court did not define the applicable standard, in Hoffmann-La Roche it established that court-approved notice to potential plaintiffs is proper in "appropriate cases."   Id. at 169-70.   The Court ruled that determining what is an "appropriate case" lies within the "discretion" of the district court.   Id.   This case is an appropriate case to send court-approved notice.

### 1.     The running of the statute of limitations.

Here, prompt court action is needed because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations on their claims.  See Redman v. U.S. West Bus. Res., Inc., 153 F.3d 691, 695 (8th Cir. 1998); Hoffmann v. Sbarro, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).   Unlike

Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action.  Id.  As a result, the statute of limitations continues to run on each individual's claim until they file a consent form with the Court.  Id.  The consequence of this fundamental difference is self-evident—every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover.  Court-facilitated notice will mitigate the continued erosion of these claims.  See Schewd v. Gen. Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995).

### 2.   Promotion of judicial economies.

Judicial notice that provides special investigators with an opportunity to pursue their claims in one forum and at one time will create the significant judicial economies recognized in Hoffmann-La Roche.  493 U.S. at 170.  Indeed, because identical issues of law and fact exist among all of Defendant's special investigators, combining these employees in one action benefits the judicial system by resolving this case collectively. Id.  Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and misspent judicial and party resources.  Requiring opt-ins Plaintiffs to file separate cases would be an inefficient use of resources.

### 3.   Interested Putative Class Members.

As discussed above, this case currently involves one Named Plaintiff and forty eight other opt-in Plaintiffs.  Each of these individuals were employed as loan officers and have shown their desire to opt in this collective action.   Other interested potential class members likely exist.

## II.    PLAINTIFF'S NOTICE IS ACCURATE AND INFORMATIVE AND SHOULD BE POSTED AT DEFENDANT'S BRANCH OFFICES.

Plaintiff's proposed judicial notice has been carefully drafted to mirror other judicial notice forms that have been approved by courts around the country. [23] As required, it is "timely, accurate, and informative." See Hoffmann-La Roche, 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. Plaintiff also requests that in addition to permitting Plaintiff to notify the potential class members by mail, this notice be posted at each of Defendant's branch offices to further the broad remedial purpose of the FLSA. See Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E. D. Cal. Apr. 19, 2006 ) (finding that first class mail, combined with posting provided for the "best notice practicable" to the potential class); Veliz v. Cintas Corp., 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring employer to post notice and consent forms in all of its work sites); Johnson v. Am. Airlines, Inc., 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards reasonable).

## III.   DISCOVERY OF NAMES AND ADDRESSES OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE.

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. Morden v. T-Mobile USA, Inc., 2006 WL 1727987, at *3 (W. D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional

---

[23] See Ex. F attached to Srey Aff.

class certification motion was pending before the court).  "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action."  Id.  As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice.  See Hoffmann-La Roche, 493 U.S. at 165; see also Dietrich v. Liberty Square, 230 F.R.D. 574, 581 (N.D. Iowa 2005); Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006).

Plaintiff has requested that Defendant produce a list of Plaintiffs' other loan officers as these individuals are critical fact witnesses to the key issues in this litigation. While Defendant response to this request is not yet due, Plaintiff suspects that Defendant will object to producing such a list. [24]  Regardless, if the Court grants Plaintiff's motion, the Court should order Defendant to provide Plaintiff with a list of all putative class members to carry out notice.

## CONCLUSION

Defendant employs hundreds of loan officers across the country.  At this notice stage, the Plaintiff's evidence sufficiently meets the lenient standard in showing that she and putative class members share similar job requirements and pay and should therefore be allowed to provide notice and proceed collectively through discovery.

---

[24] The names and addresses of potential class members are discoverable during the regular course of discovery even absent judicial  notice because current and former loan officers are critical fact witnesses to this lawsuit.  Hoffmann-La Roche acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter."  493 U.S. at 160; see also Barton v. The Pantry, Inc., 2006 WL 2568462 (M.D.N.C. Aug. 31, 2006) (ordering defendant to produce a list of plaintiffs' co-workers prior to conditional certification).  Plaintiff served his first set of discovery requests on Defendant on November 1, 2006.  (Srey Aff. ¶ 6.)  Plaintiff's discovery requests specifically seek the names and addresses of all current and former loan officers who worked for Defendant during the last three years.  (Id.)

Dated: November 22, 2006        s/Rachhana T. Srey_____
Donald H. Nichols, MN #78918
(admitted pro hac vice)
Paul J. Lukas, MN #22084X
(admitted pro hac vice)
Rachhana T. Srey, MN #340133
(admitted pro hac vice)
NICHOLS KASTER & ANDERSON, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fascimile: (612) 215-6870
srey@nka.com

Matthew Fenton (Fla. Bar No. 0002089)
WENZEL & FENTON, P.A.
633 N. Franklin Street, Suite 500
Tampa, Florida 33602
Telephone (813) 224-0431
Fax (813) 229-8712
mfenton@wenzelfenton.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 22, 2006, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notice of

electronic filing to the following:

Colleen M. Flynn, ColleenF@jpfirm.com; Benjamin James Mollo, bmollo@pmtgf.com,
ibrody@pmtgf.com, vcarver@pmtgf.com

<u>s/Rachhana T. Srey</u>
Rachhana T. Srey