Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2005 WL 1156030 (S.D.Fla.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Lloredo v. RadioShack Corp.S.D.Fla.,2005.Only
the Westlaw citation is currently available.
United States District Court,S.D. Florida.
Rudy LLOREDO and Christopher Wright,
individually, and on behalf of all others similarly
situated, Plaintiffs,
v.
RADIOSHACK CORPORATION, Defendant.
No. 04-20991-CIV-HOEVELE.

May 12, 2005.

Jeffrey M. Herman, Stuart S. Mermelstein, and
Adam D. Horowitz of Herman & Mermelstein, P.A.
in Miami, Florida., for Plaintiffs.
Radioshack Corporation, was represented by Ross
H. Hyslop of McKenna, Long & Aldridge in San
Diego, California., for Defendant.

*ORDER GRANTING PLAINTIFF'S MOTION FOR
CONDITIONAL CLASS CERTIFICATION AND TO
FACILITATE NOTICE TO ABSENT CLASS
MEMBERS*
HOEVELER, Senior J.
**1** THIS CAUSE comes before this Court upon
Plaintiff's Motion for Conditional Class
Certification, filed July 6, 2004. On May 2, 2005,
this Court heard argument from the parties as to the
merits of this motion; specifically, the parties
argued as to whether it would be appropriate for
this Court, prior to permitting conditional
certification, to examine the discovery completed to
date to determine whether the putative members of
this action are appropriately situated to proceed on
a collective basis.

The Eleventh Circuit's guidance is clear: in this
Circuit a conditional certification may be granted, at
the first stage of a two stage process, if the
pleadings and declarations when viewed under a
fairly lenient standard demonstrate that there are

others who are "similarly situated" and who may
desire to "opt-in" to the case. *See Hipp v. Liberty
National Life Ins. Co.,* 252 F.3d 1208 (11th
Cir.2001), *Cameron-Grant v. Maxim Healthcare
Svcs ., Inc.,* 347 F.3d 1240 (11th Cir.2003).
Plaintiffs have filed more than one hundred notices
from persons who desire to become a part of this
action; all of whom had the designation at one time
of being employed by Defendant as a "Y Store"
Manager. (The "Y" distinguishes a category of the
Defendant's stores based upon annual sales volume.)

Defendant does not dispute that there are a number
of "Y Store" Managers who seek to participate in
this collective action. Instead, Defendant argues that
sufficient discovery has been done in this case, and
in other similar collective action cases against
Defendant, to support its argument that Plaintiffs
Rudy Lloredo and Christopher Wright are not
representative of those whom they seek to introduce
into this collective action. Moreover, Defendant
argues that those current and former employees in
the job category at issue have/had such a broad
range of duties that a collective action would be
impossible to manage. While Defendant argues that
Plaintiffs' counsel herein are familiar with-and,
indeed, may be directly engaged in-two other
federal collective actions against Defendant
reportedly alleging similar wage violations, *Perez v.
RadioShack,* Case No. 02C7884 (N.D.Ill.), and
*Goldman v. RadioShack,* Case No. 03cv0032
(E.D.Pa.), this Court is nevertheless making its
decision today based upon the record in this action.

Defendant may have a colorable argument, but at
this stage of the proceedings Plaintiffs have carried
the burden as described by the Eleventh Circuit
Court of Appeals. Thus, based upon the above, it is

ORDERED AND ADJUDGED that the Plaintiffs'
Motion be GRANTED. Counsel shall take the steps
necessary to provide notice to those individuals
described in the Plaintiffs' Complaint, consistent
with the relief requested in Plaintiff's Motion.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 2

Not Reported in F.Supp.2d, 2005 WL 1156030 (S.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**


DONE AND ORDERED.

S.D.Fla.,2005.
Lloredo v. RadioShack Corp.
Not Reported in F.Supp.2d, 2005 WL 1156030
(S.D.Fla.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2868383 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Motion for Conditional
Class Certification and to Facilitate Notice to
Absent Class Members Under 29 U.S.C. |216(b),
and Incorporated Memorandum of Law (Jul. 6,
2004) Original Image of this Document with
Appendix (PDF)
• 2004 WL 2868373 (Trial Pleading) Defendant
Radioshack Corporation's Answer to Class Action
Complaint (May 26, 2004) Original Image of this
Document (PDF)
• 1:04CV20991 (Docket) (Apr. 28, 2004)
• 2004 WL 2868362 (Trial Pleading) Class Action
Complaint (2004) Original Image of this Document
with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 84500 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 401, 18 Fla. L. Weekly
Fed. D 379
**(Cite as: 2005 WL 84500 (S.D.Fla.))**

H

**Motions, Pleadings and Filings**

United States District Court,
S.D. Florida.
Sean PENDLEBURY and Laurel Overton, on behalf
of themselves and all others
similarly situated, Plaintiffs,
v.
STARBUCKS COFFEE COMPANY, a foreign
corporation, qualified to do business in
Florida as Starbucks Corporation, Defendant.
**No. 04-CV-80521.**

Jan. 3, 2005.
Daniel R. Levine, Robin Ilene Cohen, Shapiro Blasi
& Wasserman, Boca Raton, FL, for Plaintiffs.

Kelly-Ann Gibbs Cartwright, Dalia Mercedes
Garcia, Tiffani Gay Lee, Holland & Knight, Miami,
FL, Daniel L. Nash, Nathan J. Oleson, Akin Gump
Strauss Hauer & Feld LLP, Washington, DC,
Catherine A. Conway, Joel M. Cohn, Akin Gump
Strauss Hauer & Feld, Los Angeles, CA, for
Defendant.

*ORDER*

MARRA, J.

**\*1** This Cause is before the Court upon Plaintiffs'
Motion to Permit Court-Supervised Notification
Pursuant to 29 U.S.C. § 216(b), filed June 3, 2004
(DE 3). On September 14, 2004, Defendant filed a
response to the motion. (DE 34.) On October 5, 2004,
Defendant filed a reply (DE 45.) The Court has
considered the motion and the various other matters,
and is otherwise advised in the premises. [FN1]

> FN1. The Court also addresses in this Order
> Defendant's Motion for Summary Judgment,
> filed September 29, 2004 (DE 38), and
> Plaintiffs' Motion to Abate Ruling on
> Defendant's Motion for Summary Judgment,
> filed October 18, 2204 (DE 46).

*I. Background*

On June 3, 2004, Plaintiffs Sean Pendlebury and
Laurel Overton filed a Verified Complaint against
Defendant Starbucks Coffee Company ("Starbucks")
asserting a claim for unpaid overtime under the Fair
Labor Standards Act, 29 U.S.C. § 216 ("FLSA").
(DE 1.) Plaintiffs are store managers for two
Starbucks locations in Broward County, Florida. (DE
34 at 2.)

In the Verified Complaint, Plaintiffs allege that they,
and others similarly situated, are or were improperly
classified by Starbucks as exempt for purposes of
overtime compensation eligibility. (Verified
Complaint ¶ ¶ 9-10.) In support, Plaintiffs assert that
their primary duties as store managers consist of
waiting on customers, making coffee drinks, and
ringing up sales, and that their management duties are
relatively unimportant in comparison. (Verified
Complaint ¶ ¶ 10-12.) They further assert that they
rarely exercise discretionary powers, and that they
are not relatively free from supervision. (Verified
Complaint ¶ ¶ 13-14.) Plaintiffs state that their pay is
substantially similar to certain non-exempt
employees, such as shift supervisors and assistant
managers. (Verified Complaint ¶ 15.) Finally,
Plaintiffs contend that they do not customarily and
regularly supervise two (2) or more full-time
employees or their equivalent. (Verified Complaint ¶
16.) Plaintiffs complain therefore that Starbucks has
improperly classified them as exempt employees for
purposes of overtime compensation, thereby violating
the FLSA. (Verified Complaint ¶ 18.) Plaintiffs seek
compensation in the form of time and one-half for
each hour worked in excess of forty (40) hours per
workweek, as well as liquidated damages equal to the
amount of overtime compensation, costs and
attorney's fees, as well as declaratory and injunctive
relief. (Verified Complaint ¶ ¶ 4-22-24.)

In addition to seeking relief on their own behalf,
Plaintiffs are attempting to bring this suit on behalf of
other similarly situated current and former Starbucks
store managers. (Verified Complaint ¶ 8.) Plaintiffs
state that there are approximately ten (10) other
Starbucks' store managers who have indicated a
willingness to become opt-in plaintiffs in this lawsuit.
(Verified Complaint ¶ 20.) In the Motion to Permit
Court-Supervised Notification, Plaintiffs ask the
Court to permit them to give notice of this lawsuit to
all current and former employees who have held the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 84500 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 401, 18 Fla. L. Weekly
Fed. D 379
(Cite as: 2005 WL 84500 (S.D.Fla.))

position of store manager at Starbucks and were classified as exempt during the three years preceding the filing of this lawsuit, so that they may be given the opportunity to join in this lawsuit.

*2 In addition to the sworn allegations in the Verified Complaint, Plaintiffs have filed the declarations of four individuals, all of whom are former store managers of Starbucks, in support of their motion. These four individuals uniformly state that, like the named Plaintiffs, they were not paid overtime compensation even though they customarily and regularly perform non-exempt duties similar to those performed by their subordinates; that the management duties they perform are relatively unimportant; that they rarely exercise discretionary powers; that they are not relatively free from supervision; that their pay is substantially similar to certain non-exempt employees; and that they do not customarily and regularly supervise two (2) or more full-time employees or their equivalent. (Declarations of Selena Perry, David Ritter, Abdul Makkawi, and Stephen E. Tulloch ¶ ¶ 6-11.) The four declarants worked at several different Starbucks locations throughout the country, as follows: Selena Perry worked as a store manager in Iowa; David Ritter worked as a store manager in Virginia; Abdul Makkawi worked as a store manager in Deerfield Beach, Florida; and Steve E. Tulloch worked as a store manager in Connecticut, as well as Hollywood, Florida. (Declarations ¶ 4.) Plaintiffs contend that the allegations of the Verified Complaint, coupled with the declarations, are sufficient to show that Starbucks had an alleged policy, practice, and procedure of classifying managerial employees as exempt. (Motion at 3, 6.) Plaintiffs therefore assert that notification of this lawsuit should be sent to all former and current managerial employees who are or were subject to this policy. (Motion at 3.)

In response to the motion, Starbucks contends that this action should not be maintained as a collective action because Plaintiffs have not established that they are similarly situated to the putative class members. (Response at 1-16.) Starbucks asserts that Plaintiffs' own depositions reveal differences with respect to the amount of time they themselves spend on exempt tasks and the total number of subordinate hours they supervise. (Response at 8-16.) Furthermore, Starbucks has submitted the affidavit of a third Starbucks store manager, Reniero Valdez, who performs her job as store manager differently than the named Plaintiffs. (Exhibit 4 to Response.) Finally, Starbucks insists that an alleged practice of

classifying an entire job title as exempt is not alone sufficient to show that each person within the job title is "similarly situated." (Response at 10-11.) It stands to reason, Starbucks contends, that its alleged practice of classifying its store managers as exempt is not a sufficient reason to permit notice of this action to thousands of different store managers around the country. (Response at 10.)

In reply, Plaintiffs argue that Starbuck's attempt to show the differences in the way its store managers perform their jobs is premature at this stage of the litigation. (Reply at 7.) Plaintiffs contend that only minimal evidence is required at this "notice stage" of the two-tier procedure outlined in *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir.2001). (Reply at 7.) Plaintiffs assert that the allegations of the Verified Complaint, the declarations of four former store managers, as well as Starbucks' own job description for the position of store manager, together show that court-supervised notice is warranted. (Reply at 5-6, 8.) Accordingly, Plaintiffs ask this Court to permit court-supervised notification so that other store managers are given an opportunity to join in this lawsuit. (Reply at 8.)

*II. Discussion*

*3 The FLSA provides that an action for overtime compensation "may be maintained ... by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated.*" 29 U.S.C. § 216(b) (emphasis added). The Eleventh Circuit Court of Appeals has outlined a two-tiered procedure to guide district courts in deciding whether plaintiffs are "similarly situated" for purposes of class certification under § 216(b). *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir.2001); *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir.2003) ("*Hipp* outlined a two-tiered procedure that district courts should use in certifying collective actions under § 216(b) ..."). At the "notice stage" of the two-tiered procedure, a court's determination is "usually based only on the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* The second stage of the two-tiered procedure usually occurs at the end of discovery upon the defendant's motion for decertification of the class. *Id.* At the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 84500 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 401, 18 Fla. L. Weekly
Fed. D 379
**(Cite as: 2005 WL 84500 (S.D.Fla.))**

second stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question. *Id.*

Following the Eleventh Circuit's directive in *Cameron-Grant* and *Hipp,* this Court will review Plaintiffs' request for court-supervised notification to the putative class under the first stage of the two-tiered procedure outlined in *Hipp.* This case is at an early stage of litigation before the parties have had a sufficient opportunity to engage in discovery, and thus a factual determination on the similarly situated question is not appropriate at this time. *C.f. Holt v. Rite Aid Corp.,* 333 F.Supp.2d 1265, 1274 (M.D.Ala.2004) (applying a stricter standard in ruling on plaintiff's motion for court-facilitated notice because the parties presented extensive evidence on the issue of whether the putative class members were similarly situated). Hence, the Court will look to the pleadings and affidavits on record to determine whether there are substantial allegations showing that the named Plaintiffs are similarly situated to the putative class members.

The evidence submitted by Plaintiffs consists of their sworn allegations in the Verified Complaint and the affidavits of four former Starbucks store managers. The named Plaintiffs and the four individuals uniformly agree that despite being classified as exempt for purposes of overtime compensation, they all perform or performed non-exempt work as their primary duty and do or did not regularly supervise two (2) or more full-time employees or their equivalent. (Declarations of Selena Perry, David Ritter, Abdul Makkawi, and Stephen E. Tulloch ¶ ¶ 6, 11.) The alleged improper classification spans approximately seven different Starbucks locations in four different states. Additionally, both the Verified Complaint and the affidavits indicate that there exist other managers around the country who would desire to opt-in this lawsuit if given the opportunity. (Declarations ¶ 13.) The Court concludes that this evidence is sufficient to meet the fairly lenient standard for the giving of notice to potential class members under the first stage of the two-tier *Hipp* procedure. [FN2] Starbucks' assertion that each of the named Plaintiffs and Ms. Valdez spend different amounts of time on exempt tasks and supervise different numbers of subordinate hours does not persuade this Court otherwise. Such an assertion does not sufficiently rebut, at least for purposes of this notice stage of the litigation, the uniform testimony of the named Plaintiffs and the declarants that they perform or performed non-exempt work as their

primary duty and that they did not regularly supervise two (2) or more full-time employees or their equivalent. Moreover, Starbucks' assertion raises factual matters not appropriate for consideration at this notice stage of litigation. *See Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D.Kan.2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D.Cal.2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed clas."); *Goldman v. Radjoshack Corp.,* No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D.Pa. April 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Felix De Asencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final **similarly situated** tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the **similarly situated** question."); *but see Mike v. Safeco Ins. Co.,* 274 F.Supp.2d 216, 220-21 (D.Conn.2003) (denying plaintiffs' motion for **conditional certification** because the determination of defendant's liability under the **FLSA** for allegedly improperly classifying employees as exempt would be based upon the tasks the employee performed on a day-to-day basis and thus would be specific to the individual).

> FN2. Having concluded that Plaintiffs have met their burden at this first stage of the two-tier *Hipp* procedure, the Court does not reach the issue raised by the parties whether a policy, practice, and procedure of classifying store managers as exempt would alone meet the standard for treating this action as a collective action.

*4 Accordingly, the Court concludes that Plaintiffs are permitted to give notice of this lawsuit to all current and former employees who, during the three years preceding the filing of this lawsuit, have held the position of store manager at Starbucks and were classified as exempt for purposes of overtime

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4
Not Reported in F.Supp.2d, 2005 WL 84500 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 401, 18 Fla. L. Weekly
Fed. D 379
(Cite as: 2005 WL 84500 (S.D.Fla.))

compensation, in a form to be approved by this Court.

*III. Conclusion*

Based upon the foregoing, it is ORDERED AND ADJUDGED as follows:

1. Plaintiffs' Motion to Permit Court-Supervised Notification Pursuant to 29 U.S.C. § 216(b), filed June 3, 2004 (DE 3) is GRANTED.

2. Plaintiffs are authorized to give notice of this lawsuit to all current and former employees who have held the position of store manager at Starbucks and were classified as exempt during the three years preceding the filing of this lawsuit, in a form to be approved by this Court.

3. The parties shall meet and confer regarding the content of the proposed Notice and Consent forms. On or before January 24, 2005, the parties shall submit to the Court for review their agreed-upon proposed Notice and Consent forms, if any. If the parties are unable to agree upon the forms, Plaintiffs shall file with the Court their proposed forms by January 24, 2005. Defendant shall be permitted to file any objections to the proposed forms within ten (10) days after the forms are filed with the Court. The parties shall address in their submissions the appropriate deadline for the filing of consents by the putative class members. Thereafter, the Court will review the submissions by the parties and issue the Court-authorized Notice and Consent forms.

4. Having considered the arguments made in Plaintiffs' Motion to Abate Ruling on Defendant's Motion for Summary Judgment (DE 46), and because this case is at the early stages of discovery, Defendant's Motion for Summary Judgment, filed September 29, 2004 (DE 38), is DENIED as premature, without prejudice. Defendant may resubmit a motion for summary judgment at or near the close of discovery. All related motions (DE 40, 41, 46) are DENIED as moot, without prejudice.

5. The Court will enter a separate Order scheduling all pretrial deadlines and setting this matter for trial.

6. Finally, due to Plaintiffs' recent filing of an Amended Motion For Leave to Amend the Complaint (DE 53), Plaintiffs' initial motions to amend the Complaint (DE 51 & 52) are DENIED as moot.

Not Reported in F.Supp.2d, 2005 WL 84500 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 401, 18

Fla. L. Weekly Fed. D 379

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2874506 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. § 216(b) (Sep. 30, 2004)Original Image of this Document (PDF)

• 2004 WL 2874494 (Trial Motion, Memorandum and Affidavit) Defendant Starbucks Corporation's Motion for Summary Judgment and Accompanying Memorandum of Law (Sep. 29, 2004)Original Image of this Document (PDF)

• 2004 WL 2874479 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Emergency Motion for Protective Order (Sep. 10, 2004)Original Image of this Document (PDF)

• 2004 WL 2874459 (Trial Motion, Memorandum and Affidavit) Defendant's Emergency Motion for Protective Order and Incorporated Memorandum of Law (Aug. 25, 2004)Original Image of this Document (PDF)

• 2004 WL 2874444 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiffs' Opposition to Motion to Stay Consideration of Plaintiffs' Motion to Permit Court-Supervised Notification (Aug. 10, 2004)Original Image of this Document (PDF)

• 2004 WL 2874427 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Stay consideration of Plaintiffs' Motion to Permit Court-Supervised Notification Pursuant to 29 U.S.C. § 216(b) (Aug. 2, 2004)Original Image of this Document with Appendix (PDF)

• 2004 WL 2874411 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Stay Consideration of Plaintiffs' Motion to Permit Court-Supervised Notification Pursuant to 29 U.S.C. § 216(b) and Incorporated memorandum of Law (Jul. 21, 2004)Original Image of this Document (PDF)

• 2004 WL 2874403 (Trial Pleading) Answer of Defendant Starbucks Corporation (Jun. 28, 2004)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                     Page 5
Not Reported in F.Supp.2d, 2005 WL 84500 (S.D.Fla.), 10 Wage & Hour Cas.2d (BNA) 401, 18 Fla. L. Weekly
Fed. D 379
(Cite as: 2005 WL 84500 (S.D.Fla.))

• <u>2004 WL 2874368</u>   (Trial Pleading) Verified Complaint and Demand for Jury Trial (Jun. 3, 2004)Original Image of this Document (PDF)

• <u>2004 WL 2874388</u> (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Permit Court-Supervised Notification Pursuant to 29 U.S.C. § 216(b) and Incorporated Memorandum of Law (Jun. 3, 2004)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Champneys    v.    Ferguson    Enterprises,
Inc.S.D.Ind.,2003.
United States District Court,S.D.
Indiana,Indianapolis Division.
Eugene T. CHAMPNEYS, and other similarly
situated individuals, Plaintiffs,
v.
FERGUSON ENTERPRISES, INC., and Ferguson
Thrall Distribution, Inc., Defendants.
**No. IP 02-535-C H/K.**

March 11, 2003.

James D. Masur II, Locke Reynolds LLP,
Indianapolis, IN, for Plaintiffs.
Offer Korin, Katz & Korin, Indianapolis, IN, for
Defendants.

ENTRY ON PLAINTIFF'S MOTION FOR
APPROVAL OF NOTICE OF LAWSUIT UNDER
THE FAIR LABOR STANDARDS ACT AND
FOR PRODUCTION OF NAMES AND
ADDRESSES OF POTENTIAL CLASS
MEMBERS

DAVID F. HAMILTON, District Judge.

*1 Plaintiff Eugene T. Champneys is a former
employee of Ferguson Enterprises, Inc. He filed this
suit on behalf of himself and other similarly situated
individuals alleging that Ferguson Enterprises, Inc.
failed to pay compensation for overtime as required
by the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201 *et seq.* Champneys has also asserted
state law claims for damages. Champneys has
moved for approval of notification and for
production of names and addresses of potential
class members. For the reasons explained below,
the plaintiff's motion is granted.

I. *Factual Background*

Plaintiff Champneys was a sale consultant for Thrall
Distribution, Inc. ("TDI"). On August 2, 1999,
Ferguson Enterprises VII, Inc., a subsidiary of
Ferguson Enterprises, Inc. (collectively referred to
as "Ferguson"), purchased the assets of TDI.
Ferguson Enterprises VII, Inc. later changed its
name to Ferguson Thrall Distribution, Inc., which is
also a defendant here.

From August 2, 1999 until January 1, 2000,
Ferguson leased associates from TDI, including
Champneys. At the end of that period of time,
Ferguson offered continued employment to
approximately five sales associates, including
Champneys. Pierce Aff. ¶ 9. On January 1, 2000,
Champneys accepted employment with Ferguson as
an outside sales representative.

Ferguson advised Champneys that he would
continue to receive compensation according to
TDI's compensation plan until November 1, 2000,
at which time he would be switched to the Ferguson
compensation plan. During this transition period,
Champneys was paid a monthly base salary of
$2,400 and a guaranteed monthly commission of
$2,492. Pierce Aff. ¶ 14. On November 8, 2000,
Champneys resigned. Champneys was not paid
overtime by Ferguson at any time during his
employment. Champneys Aff. ¶ 5.

While employed by Ferguson, Champneys sold
pipes, valves, pumps, fittings, and other products
for Ferguson. Champneys Aff. ¶ 5. He received
commissions based on the dollar value of those
sales. Champneys Aff. ¶ 5.

Ferguson paid for and maintained a separate
dedicated facsimile phone line in Champneys' office
in his home. Champneys Aff. ¶ 6. This phone line
was used exclusively for selling Ferguson products.
Champneys Aff. ¶ 6. Ferguson also provided
Champneys with "other office facilities from which
to make sales." Champneys Aff. ¶ 7. Champneys
estimates that "[a]pproximately 97 percent of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 2

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
**(Cite as: Not Reported in F.Supp.2d)**

dollar value of orders for Ferguson products placed by ... Ferguson customers within [Champneys'] customer base were placed with Ferguson ... either: (a) by telephone, mail, or facsimile transmission directly either to Ferguson's Indianapolis or Lafayette office; or (b) by telephone to [Champneys'] home office." Champneys Aff. ¶ 8.

## II. *Preliminary Matters*

Before addressing the plaintiff's motions for approval of notification and for production of names and addresses of potential plaintiffs, the court must first address two preliminary matters. Plaintiff has requested that the court strike the affidavit of Sandra D. Pierce, see Def. Br. Ex. 1, and the defendant's surreply. Both motions are denied.

### A. *Motion to Strike Affidavit*

*2 Defendants submitted the affidavit of Sandra D. Pierce to support their arguments against plaintiff's motions. Plaintiff contends the Pierce affidavit should be stricken because she has sought to testify as to matters beyond her personal knowledge, as to legal conclusions, and as to hearsay. The court addresses each in turn.

Pierce has been the manager of employment practices at Ferguson since 1994. As a result, she should be familiar with the job descriptions of Ferguson's employees, as well as the policies and practices in place during Ferguson's acquisition of TDI. To the extent that she testifies to what Champneys' job duties were, the court understands that to be a description of what his duties should have been as set out by company policy, and not necessarily how they were actually performed. Thus, Pierce has personal knowledge and is competent to testify.

Plaintiff next argues that Pierce makes improper legal conclusions by classifying Champneys as an " outside salesman." Again, the court understands Pierce to be classifying Champneys based on company classifications and not based on legal

definitions. Since she is the manager of employment practices, she is familiar with and entitled to state what Champneys' job title with Ferguson was.

Finally, plaintiff argues that Pierce's affidavit contains inadmissible hearsay. Specifically, Champneys argues that paragraph 17 is hearsay in that it attempts to state what the Department of Labor said. Hearsay is an out of court statement offered for the truth of the matter asserted. Fed.R.Evid. 801(c). Paragraph 17 simply states that in the last eight years, Ferguson has been audited by the Department of Labor on at least six occasions; that the Department of Labor has reviewed and discussed with Pierce Ferguson's exempt and non-exempt classifications; and that the Department of Labor has never questioned those classifications. None of these is an out of court statement offered for the truth of the matter asserted. Rather these are events which may or may not have occurred, though their relevance remains debatable. Therefore, plaintiff's motion to strike the affidavit of Pierce is denied.

### B. *Motion to Strike Surreply Brief*

Plaintiff next argues that defendants' surreply brief should be stricken because defendants (1) improperly assert they are entitled to summary judgment; (2) resubmit the affidavit of Pierce; and (3) "fail to alert this Court to deposition testimony adduced by their counsel which eviscerates the *sine qua non* of the exemption on which they rely, the ' outside salesman' exemption" under the FLSA. Pl. Br. to Strike Surreply at 1. Contrary to plaintiff's assertions, defendants have not made a motion for summary judgment. At the notice stage of litigation, regardless of how low the hurdle for plaintiff may be, it is not improper for defendants to question Champneys' ability to act as class representative. See, e.g., *Bontempo v. Metro Networks Communications Ltd. Partnership*, 2002 WL 1925911, *1 (N.D.Ill. May 3, 2002) (determining that plaintiff was not an outside salesman at notice stage of litigation). Also, because plaintiff submitted additional evidence with his reply brief, defendants were entitled to respond as a matter of elementary fairness. Plaintiff's motion to strike the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

surreply brief is denied.

### III. *Motion for Approval of Class Notification*

**\*3** Under the FLSA, an employee may bring an action on his own behalf and on behalf of other similarly situated employees. 29 U.S.C. § 216(b). Thus, the FLSA authorizes representative actions. *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 580 (7th Cir.1982). Unlike class actions under Rule 23, however, a potential class member must *opt in* to the class rather than *opt out* of the class. *Id.* As a result, Champneys has the right "to notify the people he would like to represent that he has brought a suit." *Id.*

In his current motion, plaintiff has asked the court for approval of his proposed class notification. If approved, this notice will be sent to all potential class members to notify them of their right to opt in to the class. In opposition, defendants raise two main arguments. First, defendants argue that Champneys was an "outside salesman" while employed at Ferguson and therefore was exempted from the overtime provisions of the FLSA. See 29 U.S.C. § 213(a)(1). Second, defendants argue that Champneys is not similarly situated to the class of persons he claims to represent.

### A. *Outside Salesman*

Under the FLSA, an employer may not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). However, the FLSA includes many exemptions, including one for "any employee employed in ... the capacity of outside salesman." 29 U.S.C. § 213(a)(1). The term "outside salesman" is defined according to the regulations of the Secretary of Labor. *Id.* "The employer bears the burden of proving the application of an exemption." *Klein v. Rush-Presbyterian-St. Luke's Medical Center,* 990 F.2d 279, 283 (7th Cir.1993) (affirming district court's grant of summary judgment under the

FLSA in favor of plaintiff; plaintiff was not a " professional employee" subject to exemptions similar to "outside salesman").

If Champneys was an "outside salesmen" as defined by the regulations, then he does not have "a cause of action in his own right," and he may not bring a class action on behalf of others. *Vanskike v. Peters,* 974 F.2d 806, 813 (7th Cir.1992), citing *Tidwell v. Schweiker,* 677 F.2d 560, 566 (7th Cir.1982).

Under the Department of Labor regulations, an " outside salesman" is defined as any employee "who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in ... [m]aking sales within the meaning of [29 U.S.C. § 203(k) ], or ... [o]btaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer. " 29 C.F.R. § 541.5(a). In addition, work that does not involve sales may "not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: *Provided,* That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work." 29 C.F.R. § 541.5(b) (emphasis in original).

**\*4** The term "sales" has been interpreted "to include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property." 29 C.F.R. § 541.501. " Characteristically the outside salesman is one who makes his sales at his customer's place of business. This is the reverse of sales made by mail or telephone (except where the telephone is used merely as an adjunct to personal calls)." 29 C.F.R. § 541.502(b). However, the regulations also make it clear that "any fixed site, whether home or office, used by a salesman as a headquarters or for telephonic solicitation of sales must be construed as one of his employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property." *Id.* In addition, " promotional work which is incidental to sales made, or to be made, by someone else cannot be considered as exempt work." 29 C.F.R. § 541.504(a)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
**(Cite as: Not Reported in F.Supp.2d)**

At this stage in the litigation, Champneys "need only make a modest factual showing that [he] was an inside sales representative for the purposes of the opt-in provision of the FLSA." *Bontempo v. Metro Networks Communications Ltd. Partnership*, 2002 WL 1925911, *1 (N.D.Ill. May 3, 2002) (granting plaintiff's motion for approval of opt-in notice to potential class members). Champneys has met this burden.

Champneys testified that he did not personally place any customer's orders. Champneys Dep. 75-76, 81. Rather, he testified that his duties included talking to the customers, albeit often face to face, and promoting Ferguson products by preparing surveys and assisting the clients in problem-solving. Champneys Aff. ¶¶ 9, 10; Champneys Dep. 31. Depending on how the facts surrounding Champneys' employment with Ferguson develop, his employment could fall into the category of promotional work, with the sales being consummated by someone else. See, *e.g.*, *Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F.3d 1260, 1265-66 (10th Cir.1999) ("if the employee in question does not actually consummate the sale at the location in question, then his other activities, even if closely related to sales, are not 'incidental to and in conjunction with' those sales under the regulations"; plaintiffs were "outside salesmen" because they "consummated sales of Coca-Cola products at the stores they visited"). Thus, for the purposes of deciding whether to authorize notice, plaintiff has put forth some evidence tending to show that he was not an "outside salesman." This question remains open for further consideration, of course, on a more complete record.

### B. *Similarly Situated*

Under the FLSA, an employee may bring an action only on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). As a result, Champneys must make a threshold showing that he is similarly situated to the employees on whose behalf he is seeking to pursue this claim. See *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264,

267 (D.Minn.1991) ("To obtain court authorization to send the proposed notice, plaintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist."); *Camper v. Home Quality Management Inc.*, 200 F.R.D. 516, 519 (D.Md.2000) ("plaintiff should be required 'to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists' ") (citations omitted); see also *Bontempo v. Metro Networks Communications Ltd. Partnership*, 2002 WL 1925911, *1 (N.D .Ill. May 3, 2002) ("plaintiff need only make a modest factual showing sufficient to demonstrate that plaintiff and potential plaintiffs together were victims of a common policy or plan that allegedly violated the FLSA" in order to get opt-in notice approval); *Krieg v. Pell's, Inc.*, 2001 WL 548394, *1 (S.D.Ind. March 29, 2001) (modest showing that "at least some employee-managers exist who are similarly situated to" plaintiff was sufficient to allow notice). Before notice is authorized, the court is not required to come to a " final determination" that the similarly-situated requirement has been met. *Severtson*, 137 F.R .D. at 267. To require otherwise "would indeed place an [FLSA] class action in the 'chicken and egg limbo.' " *Id.*

*5 Champneys has defined his potential class as: employees of Ferguson/Thrall who a) were engaged in sales activities from their homes or from Ferguson/Thrall-provided office space; b) were compensated on either or both a salary or commission basis; c) worked more than forty (40) hours per week in any given workweek from March 13, 1999 to the present (an "Overtime Workweek"); and d) were not paid overtime compensation for one or more Overtime Workweeks.

Pl. Motion for Approval of Notification Ex. A. Champneys has submitted the affidavits of two other Ferguson employees indicating that they were paid on a similar basis and had similar job descriptions. See Jones Aff. ¶¶ 4-7; Duckworth Aff. ¶¶ 4-8. Those employees were not former employees of TDI prior to its acquisition. See Jones Aff. ¶ 4; Duckworth Aff. ¶ 4. Ferguson also admits that it "employs both 'inside' and 'outside' sales representatives throughout the United States,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 5

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
(Cite as: Not Reported in F.Supp.2d)

the total number of which is in the thousands."
Pierce Aff. ¶ 16. It is undisputed that Ferguson
does not pay overtime to the employees it has
classified as "outside" sales representatives. See *id.*

Ferguson argues that there is no evidence that
Champneys is similarly situated to any potential
class members because he has produced no
evidence that the potential class members he has
identified were compensated on a similar basis.
This argument is not persuasive.

The Seventh Circuit has not specifically addressed
the standard to be used in determining whether
potential plaintiffs are similarly situated. However,
in *Moss v. Crawford & Co.,* a district court rejected
a similar argument. 201 F.R.D. 398 (W.D.Pa.2000).
In *Moss,* the named plaintiff had filed a motion with
the court to certify a potential class that included
both permanent and temporary employees. *Id.* at
401. The defendant's primary business involved "
insurance adjustment and risk management." *Id.* at
400. The class members all worked as adjusters on
either the Ashland or the Exxon Valdez oil spill
projects. *Id.* at 401. As a result, some workers were
located in Pennsylvania and others were located in
Alaska. *Id.* In addition, the clients in Alaska and
Pennsylvania were billed at different rates. *Id.*
However, the plaintiff-employees received a flat
50% of whatever was billed to the client. *Id.*

In granting class certification, the court noted: "
Although the FLSA does not define the term '
similarly situated', courts generally do not require
prospective class members to be identical." *Id.* at
409. The court then applied a two-step analysis
established in *Lusardi v. Xerox Corp.,* 118 F.R.D.
351 (D.N.J.1987). "During the first or 'notice stage'
, the court examines pleadings and affidavits in the
record to determine whether notice should be given
to potential class members." *Moss,* 201 F.R.D. at
409 (citations omitted). " 'Because the court has
minimal evidence, this determination is made using
a fairly lenient standard, and typically results in '
conditional certification' of a representative class.' "
*Id.,* citing *Mooney v. Aramco Services Co.,* 54 F.3d
1207, 1214 (5th Cir.1995). The court went on to
state that once "discovery is complete and more
factual information is available to the court, the

defendant may file a motion to decertify the class."
*Moss,* 201 F.R.D. at 409. At that point, "the court
uses a higher standard to analyze the similarly
situated issue ." *Id.*

*6 Furthermore, the court in *Moss* did not even
consider the three main factors (which are currently
being disputed in this case) to determine whether
class certification was appropriate until after
discovery and the defendant had petitioned to
decertify the class. See *id.* Those three factors were:
"(1) the disparate factual and employment settings
of the individual plaintiffs; (2) the various defenses
available to [the] defendant which appear to be
individual to each plaintiff; and (3) fairness and
procedural considerations." *Id.,* citing *Thiessen v.
General. Electric Capital Corp.,* 996 F.Supp. 1071,
1080 (D.Kan.1998). In analyzing those factors, the
court concluded that the "variations in the plaintiffs'
duties, job locations and hourly billing rates [did]
not differentiate the collective basis of the class to
the extent that it defeat[ed] the primary objectives
of a § 216(b) action." *Moss,* 201 F.R.D. at 410.

The same reasoning applies to this case. At the "
notice stage," the plaintiff's burden is not to prove
his entire case. Champneys has defined the class
such that it will encompass Ferguson employees
who performed similar functions and who were
compensated in a similar manner. Pl. Motion for
Approval of Notification Ex. A. The class definition
is also designed to encompass the employees who
were formerly with TDI and were then employed by
Ferguson. The fact that the pay provisions were not
identical is not sufficient to defeat the requested
notification. Further, Ferguson has not attempted to
explain just how its compensation plan differed
from that of TDI. See Pierce Aff. ¶ 11. At this
stage of the litigation, there is a sufficient showing
that "at least some" sales representatives are
similarly situated to Champneys. See *Krieg,* 2001
WL 548394, at *1.

Ferguson also argues that the time period of the
class should be changed since Champneys did not
begin working for Ferguson until after its
acquisition of TDI in August 1999. However,
Champneys' claim is that he was denied overtime
pay in violation of the FLSA. That claim and any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
**(Cite as: Not Reported in F.Supp.2d)**

potential defenses would not change if the time period were to cover from August 1999 until the present only. As a result, at least for purposes of notification, the class definition will remain the same.

### IV. *Motion to Compel Production of Names and Addresses*

Since the motion for approval of notification is granted, plaintiff's motion for disclosure of names and addresses of potential plaintiffs is also granted. See *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 267 (D.Minn.1991) (remanding for reconsideration under different standard magistrate's approval of notification; noting that if notice is warranted, discovery of names and addresses of potential plaintiffs should be allowed). Defendants shall produce to plaintiff no later than April 15, 2003 a list of all current or former employees (and last known addresses) who engaged in sales activities for defendants at any time from March 13, 1999 to the present, either from their homes or from office space provided by defendants, and who were not paid overtime compensation.

### V. *Notice to the Potential Class*

*7 The court approves plaintiff's proposed form of notice, except that it shall provide that opt-in forms be returned to plaintiff's counsel, not to the court. Plaintiff shall mail the notice to members of the potential class within 30 days of receipt of the list from defendants. The form of notice shall require opt-in forms to be returned to plaintiff's counsel postmarked no later than 45 days after the date the notice is sent. The form shall have a specific month and day inserted to inform recipients of the deadline.

### *Conclusion*

For the reasons stated above, the plaintiff's motions for approval of class notification and for production of names and addresses of potential class members are granted.

So ordered.

S.D.Ind.,2003.
Champneys v. Ferguson Enterprises, Inc.
Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026

Briefs and Other Related Documents (Back to top)

• 2003 WL 23917693 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion for Order of Dismissal (Aug. 25, 2003) Original Image of this Document (PDF)
• 2002 WL 32749600 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiff's Motion to Strike (Dec. 16, 2002) Original Image of this Document (PDF)
• 2002 WL 32749598 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiff's Motion to Strike Affidavit of Sandra D. Pierce and Defendants' Sur-Reply Brief (Dec. 9, 2002) Original Image of this Document (PDF)
• 2002 WL 32749597 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion to Strike Defendants' Sur-Reply Brief (Nov. 20, 2002) Original Image of this Document (PDF)
• 2002 WL 32749595 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Support of Motions for Approval of Class Notification and for Order Directing Defendants to Produce Names and Addresses of Potential Class Members (Sep. 23, 2002) Original Image of this Document (PDF)
• 2002 WL 32749593 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Motion for Order Directing Defendant to Produce Names and Addresses of Potential Class Members (Aug. 12, 2002) Original Image of this Document (PDF)
• 2002 WL 32749590 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Motion for Approval of Notification to Potential Class Members (Aug. 9, 2002) Original Image of this Document (PDF)
• 2002 WL 32749588 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Approval of Class Notification (Jul. 11, 2002) Original Image of this Document (PDF)
• 2002 WL 32749587 (Trial Pleading) Answer to Complaint, Affirmative Defenses, and Request for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 7

Not Reported in F.Supp.2d, 2003 WL 1562219 (S.D.Ind.), 8 Wage & Hour Cas.2d (BNA) 1026
**(Cite as: Not Reported in F.Supp.2d)**

Jury Trial (May 9, 2002) Original Image of this
Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 1081357 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

☞

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, D. Oregon.

Carolyn THIEBES and Betty Alderson, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

WAL-MART STORES, INC., a Delaware Corporation, Defendant.

**No. 98-802-KI.**

Dec. 1, 1999.

Sean Donahue, Donahue & Associates,Portland, Oregon, James M. Piotrowski, Nevin, Herzfeld & Benjamin,Boise, ID, for Plaintiffs.
David G. Hosenpud, Rudy A. Englund, Allison S. Wallin, Lane, Powell, Spears, Lubersky LLP, Portland, Oregon, for Defendant.

OPINION

KING.

**\*1** Before the court is the amended motion for class certification (# 32-1) and to permit joinder of claims (# 32-2) and the motion for order to approve notice (# 30) by plaintiffs Carolyn Thiebes and Betty Alderson. A telephone conference regarding the motions was held on September 23, 1999, oral argument was heard on October 7, 1999, and final written submissions were received on October 12, 1999. Having considered the written and oral arguments of the parties, I grant the motion to permit joinder of claims and deny the motion for class certification and the motion for order to approve notice.

> FN1. The Honorable Dennis J. Hubel issued a Findings and Recommendation ("F & R") on June 14, 1999(# 51) that addressed plaintiffs' original motion for class certification (# 8) and the motion for order to approve notice (# 30). For all intents and purposes, it also addressed plaintiffs' amended motion for class certification (# 32-1) and to permit joinder of claims (# 32-2). Objections were filed to the F & R and a response to such objections was also filed. Judge Hubel referred the F & R and the briefs related to the objections to me on July 12, 1999. After reviewing the F & R and consulting with Judge Hubel and the parties, I arranged to have the case transferred to my docket on October 4, 1999. As such, the motions listed above, and not the F & R, are now before me for consideration. No further action by the court is required as to the F & R.

BACKGROUND

Plaintiffs are former employees of defendant Wal-Mart Stores, Inc. ("Wal-Mart"). They bring this action alleging that Wal-Mart has a policy and practice of not paying its workers required overtime wages, encouraging or requiring its workers to work "off the clock," and altering employee time records in order to reduce its obligation to pay overtime wages. Plaintiffs allege that they and other hourly workers at Wal-Mart were not paid for their overtime work and that Wal-Mart failed to maintain accurate and complete records in violation of the Fair Labor Standards Act, 29 U.S.C. § § 201 et seq. ("FLSA"). Plaintiffs further allege that Wal-Mart's failure to pay overtime wages and its alteration of time-keeping records violate Oregon wage laws, including O.R.S. 652.120, 652.140, 652.610, and 653.045. Finally, plaintiffs allege state common law claims for breach of contract, conversion, quantum meruit and unjust enrichment, and breach of the covenant of good faith and fair dealing.

In their motion for joinder of claims (# 32-2), plaintiffs move for authorization of this action to proceed as a collective action, pursuant to 29 U.S.C. § 216(b), as to plaintiffs' claims under FLSA. In their motion for class

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 1999 WL 1081357 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

certification (# 32-1), plaintiffs move for certification of this suit as a class action, pursuant to Fed.R.Civ.P. 23(b)(3), as to their state law claims.

For the reasons set forth below, I grant the motion to permit joinder of claims (# 32-2) and, accordingly, certify a collective action under FLSA for purposes of notice and discovery only. I deny the motion for class certification (# 32-1) with leave to re-file such a motion after the time has closed for persons to opt in to the collective action. Because the notice proposed in the motion to approve notice (# 30) assumes approval of a class under Fed.R.Civ.P. 23, that motion is denied. However, consistent with my certification of a collective action under FLSA, plaintiffs are granted leave to file a new motion that proposes a notice for only the FLSA collective action.


DISCUSSION

I. *FLSA Collective Action*


FLSA allows for a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiffs and who file a consent in writing with the court (i.e., opt in to the case). 29 U.S.C. § 216(b).   If employees do not opt in by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. *EEOC v. Pan Am. World Airways, Inc.,* 897 F.2d 1499, 1508 n. 11 (9th Cir.), *cert. denied,* 498 U.S. 815, 111 S.Ct. 55, 112 L.Ed.2d 31 (1990).

> FN2. The statute provides in pertinent part:
> An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.

**\*2** This district and a number of other courts have held that the full extent of procedural restrictions that apply to class actions, pursuant to Fed.R.Civ.P. 23, do not apply to certification of a class under Section 216(b) of FLSA. *See Daggett v. Blind Enterprises of Oregon, et al.,* No. 95-421-ST, p. 9 (D.Or. April 18, 1996) ("I am persuaded that FRCP 23 does not apply to a § 216(b) class action."); *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 432 (S.D.N.Y.1995) (holding that Fed.R.Civ.P. 23 should not be applied at the preliminary notice stage of an ADEA class action brought under Section 216(b) of FLSA).

The procedural protections of Fed.R.Civ.P. 23 are generally not necessary for a § 216(b) class action because of that statute's opt-in requirement. As Judge Stewart explained in *Daggett:*
A plaintiff who opts in presumably has decided that the benefits of joining the class outweigh any benefits of bringing an individual action.... [T]here is no need for the court to determine whether a class action is the most efficient method to proceed because each individual plaintiff has already concluded that a sufficiently common issue of fact or law exists and that he or she will be adequately represented. In addition, the due process protections of FRCP 23 are not as crucial when absent class members are not bound by the judgment.

*Daggett* at 10.

Along these lines, the "similarly situated" standard under Section 216(b) is less stringent than the requirement under Fed.R.Civ.P. 23(b)(3) that common questions of law or fact predominate over questions affecting only individual members. *Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294, 306 (N.D.Cal.1991); *see also Wertheim v. State of Arizona,* 1993 WL 603552, \*1 (D.Ariz. Sept.30, 1993) ("The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure.") In fact, the Eleventh Circuit has held that the similarly situated requirement is more flexible than the requirements of Fed.R.Civ.P. 20 (joinder) and 42 (severance). *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.), *cert. denied,* 519 U.S. 982, 117 S.Ct. 435, 136 L.Ed.2d 332 (1996). As such, the claims and positions of employees need not be identical in order to meet the lower standards of § 216(b). *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Wal-Mart accurately asserts the standard that applies in determining if a collective action is appropriate: "[f]or prospective plaintiffs to be similarly situated, there must be a factual nexus which binds them together as victims of an alleged policy or practice." *Wyatt v. Pride Offshore, Inc.,* 1996 WL 509654, *2 (E.D.La. Sept.6, 1996); *see also Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y.1998) (plaintiffs can show that potential class members are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law."); *Wertheim, supra* ("All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA."). In this case, plaintiffs allege that Wal-Mart's policy prohibiting employees from working overtime, in conjunction with its policy of requiring employees to finish their job duties, creates an atmosphere in which working off the clock is essentially mandatory. While there may be many ways to violate the FLSA, plaintiffs here allege a specific scheme that applies to all hourly workers at Wal-Mart's Oregon stores.

**\*3** The affidavits submitted by plaintiffs, together with the allegations of the Amended Complaint, are sufficiently specific regarding how the alleged policies and practices are manifested and how they generally affect hourly employees in Oregon, such as plaintiffs. *See Bonilla v. Las Vegas Cigar Company,* 61 F.Supp.2d 1129, 1139 n. 6 (D.Nev.1999) (noting that plaintiffs bear the burden of showing that they are similarly situated, but that it "is a lenient burden for plaintiffs to meet, and can be supported by affidavits"). Annette Jorgenson and plaintiff Carolyn Thiebes both assert in their affidavits that they and other hourly employees worked off-the-clock at many of the 23 Wal-Mart stores in Oregon and did so with the acquiescence of management. They assert that they worked off-the-clock due to dueling, overriding messages from management that assigned tasks had to be completed but that such tasks could not be performed by an employee working more than her scheduled hours. The testimony of Thiebes and Jorgenson is also consistent regarding changes made within the computerized time-keeping system to reduce or eliminate overtime hours worked by employees and is consistent regarding a lack of responsiveness by management when violations of Wal-Mart's "Working Off The Clock" policy were reported. I give particular credence to Thiebes testimony, in both her affidavit and deposition, regarding practices throughout Oregon, because of her position as Personnel Manager and her interaction with Personnel Managers at other Oregon stores.

I emphasize that I am certifying the collective action only for notice and discovery purposes. I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs-far too little discovery has been taken for me to make such a determination now. Furthermore, should discovery reveal that plaintiffs are not similarly situated to some or all of the persons who may choose to opt in, I may later decertify the class or divide the class into subgroups, if appropriate. With the above qualifications, plaintiffs' motion to permit joinder of claims is granted.

II. *Rule 23 Class Action*

Plaintiffs also seek to certify this case as a class action pursuant to Fed.R.Civ.P. 23(b) with respect to their state law claims. Rule 23 allows suits to go forward as class actions only if:
[T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class [and][t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**\*4** Fed.R.Civ.P. 23(a) and (b)(3).

A court may certify a class only if it is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992). The party seeking class certification bears the burden of proving each of the elements of Rule 23.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 1999 WL 1081357 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

At this time, I decline to certify a class under <u>Rule 23</u> for a number of pragmatic reasons. First, I believe it would be difficult to fashion an effective notice to prospective class members that explains their opportunity to opt in to the FLSA collective action as well as their choice to opt out of the class action. Second, it is prudent to defer certifying a class action to see how many employees do, in fact, choose to opt in to the collective action. At that point, I will be best equipped to determine if joinder is impracticable and, thus, whether a class action may be appropriate. Likewise, at that juncture, the variety of workers and their experiences at Wal-Mart can be ascertained and I will be better able to determine if the named plaintiffs are adequate class representatives. Third, Wal-Mart has expressed its intent to move against some, if not all, of plaintiffs' state law claims and it should have an opportunity to do so before the proposed class action is certified. Finally, I make the general observation that, while plaintiffs have articulated a unifying theory of why hourly workers throughout Oregon may have not been paid all of the overtime pay that they were due (and that such a theory is sufficient to find that hourly employees are similarly situated for purposes of FLSA), plaintiffs have not demonstrated that a class action is the superior method for resolving the numerous state law claims (with varying elements) that they have pled. Plaintiffs' motion for class certification is denied.

CONCLUSION

Based on the foregoing, the motion to permit joinder of claims (# 32-2) is granted. A collective action under FLSA is certified for purposes of notice and discovery only.

The motion for class certification (# 32-1) is denied with leave to re-file such a motion after the time has closed for persons to opt in to the collective action. To the extent plaintiffs' original motion for class certification (# 8) is still pending, it is denied.

The motion to approve notice (# 30) is denied. However, plaintiffs are granted leave to file a new motion that proposes a notice for only the FLSA collective action.

D.Or.,1999.
Thiebes v. Wal-Mart Stores, Inc.
Not Reported in F.Supp.2d, 1999 WL 1081357 (D.Or.)

Briefs and Other Related Documents <u>(Back to top)</u>

• <u>3:98cv00802</u> (Docket) (Jun. 30, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 of 3 DOCUMENTS

**CRAIG M. HARRISON et al., Plaintiffs, v. ENTERPRISE RENT-A-CAR CO. et al., Defendants.**

**Case No. 98-233-CIV-T-24(A)**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*1998 U.S. Dist. LEXIS 13131*

**July 1, 1998, Decided**
**July 1, 1998, Filed**

**DISPOSITION:** [*1] Plaintiffs' Motion to Facilitate Notice (Doc. No. 33, filed March 27, 1998) GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The Florida federal court considered plaintiff former management assistants' motion to facilitate notice against defendant employer in plaintiffs' action seeking to recover unpaid overtime compensation.

**OVERVIEW:** Plaintiffs filed a motion to facilitate notice and the court granted the motion. The court held that the fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs were not similarly situated does not work against the original decision to facilitate notice. The court exercised its discretion in the interest of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.

**OUTCOME:** The court granted plaintiffs' motion to facilitate notice because it was in the interest of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Governments > Courts > Authority to Adjudicate*
[HN1] District courts have discretion, in appropriate cases, to implement *29 U.S.C.S. § 216*(b) by facilitating notice. This prerogative on the part of the district court seems borne out of the policy considerations of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Evidence > Inferences & Presumptions > General Overview*
[HN2] The power to authorize notice must be exercised with discretion and only in appropriate cases. A district court's decision, which is usually based only on the pleadings and any affidavits submitted, hinges upon whether the original plaintiffs and the potential opt-in plaintiffs are similarly situated. The Eleventh Circuit requires a determination that individuals are "similarly situated" with respect to their job requirements and with regards to their pay provisions. It is the plaintiffs' burden to show that they and potential opt-ins are similarly situated. This burden, which is not heavy, may be met by detailed allegations supported by affidavits.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Evidence > Inferences & Presumptions > General Overview*
[HN3] At the notice stage, the burden on plaintiffs to show that they and potential opt-ins are similarly situated is a lenient one.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Civil Procedure > Class Actions > General Overview*
*Civil Procedure > Dismissals > General Overview*

[HN4] The fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs are not, after all, similarly situated does not work against the original decision to facilitate notice.

**COUNSEL:** For CRAIG M. HARRISON, LIONEL L. FRANCIS, ROBERT J. DOUGLAS, JR., REGINALD N. KEITH, GAYLA KIRWAN, VICKY L. MOURER, CARLA A. RISSELL, ROBERT LUTHER, plaintiffs: Thomas A. Warren, Law Office of Thomas Warren, Tallahassee, FL.

For CRAIG M. HARRISON, LIONEL L. FRANCIS, ROBERT J. DOUGLAS, JR., REGINALD N. KEITH, GAYLA KIRWAN, VICKY L. MOURER, CARLA A. RISSELL, ROBERT LUTHER, plaintiffs: David Borgen, Morris J. Baller, Aaron Kaufmann, Debra A. Smith, Saperstein, Goldstein, Demchak & Baller, Oakland, CA.

For CRAIG M. HARRISON, LIONEL L. FRANCIS, ROBERT J. DOUGLAS, JR., REGINALD N. KEITH, GAYLA KIRWAN, VICKY L. MOURER, CARLA A. RISSELL, ROBERT LUTHER, plaintiffs: Sam J. Smith, Karen M. Doering, Burr & Smith, LLP, Tampa, FL.

For ENTERPRISE RENT-A-CAR COMPANY, THE CRAWFORD GROUP, INC., ENTERPRISE LEASING, ENTERPRISE LEASING COMPANY OF ORLANDO, ENTERPRISE LEASING COMPANY - SOUTH CENTRAL, INC., ENTERPRISE LEASING COMPANY OF GEORGIA, ENTERPRISE LEASING COMPANY SOUTHEAST, ENTERPRISE RENT-A-CAR OF TENNESSEE, defendants: Edwin John Turanchik, Peter W. Zinober, Scott T. Silverman, Zinober & McCrea, [*2] P.A., Tampa, FL USA.

For ENTERPRISE RENT-A-CAR COMPANY, THE CRAWFORD GROUP, INC., ENTERPRISE LEASING, ENTERPRISE LEASING COMPANY OF ORLANDO, ENTERPRISE LEASING COMPANY - SOUTH CENTRAL, INC., ENTERPRISE LEASING COMPANY OF GEORGIA, ENTERPRISE LEASING COMPANY SOUTHEAST, ENTERPRISE RENT-A-CAR OF TENNESSEE, defendants: Wayne A. Schrader, William J. Kilberg, Eugene Scalia, Gibson, Dunn & Crutcher LLP, Washington, DC.

For ENTERPRISE RENT-A-CAR COMPANY, THE CRAWFORD GROUP, INC., ENTERPRISE LEASING, ENTERPRISE LEASING COMPANY OF ORLANDO, ENTERPRISE LEASING COMPANY - SOUTH CENTRAL, INC., ENTERPRISE LEASING COMPANY OF GEORGIA, ENTERPRISE LEASING COMPANY SOUTHEAST, ENTERPRISE RENT-A-

CAR OF TENNESSEE, defendants: Geoffrey M. Gilbert, Thomas E. Berry, John B. Renick, McMahon, Berger, Hanna, Linihan Cody & McCarthy, St. Louis, MO.

For DORE ELMER, NICOLE BISHOP, ALISA DILORENZO, JILL STARK, movants: Thomas A. Warren, Law Office of Thomas Warren, Tallahassee, FL.

For DORE ELMER, NICOLE BISHOP, ALISA DILORENZO, JILL STARK, movants: David Borgen, Saperstein, Goldstein, Demchak & Baller, Oakland, CA.

For DORE ELMER, NICOLE BISHOP, ALISA DILORENZO, JILL STARK, movants: Sam J. Smith, [*3] Burr & Smith, LLP, Tampa, FL.

**JUDGES:** SUSAN C. BUCKLEW, United States District Judge.

**OPINION BY:** SUSAN C. BUCKLEW

**OPINION:**

**ORDER**

This cause comes before the Court for consideration of Plaintiffs' Motion to Facilitate Notice (Doc. No. 33, filed March 27, 1998). Defendants responded in opposition on April 10, 1998 (Doc. No. 42).

Defendants, Enterprise Rent-A-Car and various wholly owned corporate subsidiaries, maintain "branches" for the purpose of renting cars to the public. The eight original Plaintiffs, former "Management Assistants" for Enterprise Rent-A-Car, seek to recover unpaid overtime compensation (together with liquidated damages and attorney's fees) from the Enterprise Defendants under the Fair Labor Standards Act (FLSA), $29 U.S.C. \S 216(b)$ n1. Plaintiffs also seek to represent "similarly situated" Management Assistants currently or formerly employed by the Enterprise Defendants. To this end, fifty-eight "opt-in" Plaintiffs have filed written consents to participate in this lawsuit. At present, then, there are eight original plaintiffs and fifty-eight opt-in plaintiffs, residing in thirteen difference states (Alabama, California, Colorado, Florida, Georgia, Illinois, Indiana, [*4] Maryland, Minnesota, Missouri, New York, Virginia, and West Virginia). (Doc. No. 37, Ex. H.) The state most frequently represented is Florida (with thirty-five plaintiffs and opt-ins). Id. Suggesting that there are great numbers of potential opt-ins whose identities and addresses are unknown to them, Plaintiffs move this Court, pursuant to section 216(b), to facilitate notice to this diaspora.

n1 "Any employer who violates the provisions of [the FLSA] ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages...." *29 U.S.C. § 216*(b). FLSA contains its own provision for the maintenance of collective actions. In relevant part, it allows such actions "[to] be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Id. Unlike class actions certified pursuant to *Rule 23 of the Federal Rules of Civil Procedure*, a collective FLSA action under section 216(b) does not bind individuals who have not consented to join it. See, e.g., *Garner v. G.D. Searle Pharm. & Co., 802 F. Supp. 418, 421 (M.D. Ala. 1991)* ("Under § 216(b) ... a person is not considered a member of the 'collective action' and will not be bound by or benefit from the court's judgment unless the person has filed a written consent with the court and thereby affirmatively 'opted in' to the suit.").

[*5]

It has been noted that nothing in § 216(b) itself confers the power to facilitate notice. See *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 176, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)* (Scalia, J., dissenting). Despite this absence of statutory basis, the Supreme Court has held that "[HN1] district courts have discretion, in appropriate cases, to implement *29 U.S.C. § 216*(b) ... by facilitating notice." *Id. at 169*. Accord *Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)* (holding that district court has the power, "under appropriate circumstances," "to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire...."). This prerogative on the part of the district court seems borne out of the policy considerations of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche, 493 U.S. at 172*.

Nonetheless, "[HN2] the power to authorize notice must be exercised with discretion and only in appropriate cases." *Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir. 1983)*. The district court's decision, which is usually based only on the pleadings [*6]   and any affidavits submitted, see *Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995)*, hinges upon whether the original plaintiffs and the potential opt-in plaintiffs are "similarly situated." See *Dybach, 942 F.2d at 1567*. Although "neither the FLSA nor its implementing regulations define the term 'similarly situated,'" *Hoffman v.*

*Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)*, this Court and this Circuit have arrived at a rough calculus: "The Eleventh Circuit requires a determination that individuals 'are "similarly situated" with respect to their job requirements and with regards to their pay provisions.'" *Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 947 (M.D. Fla. 1994)* (quoting *Dybach, 942 F.2d at 1567*).

It is, of course, the Plaintiffs' burden to show that they and potential opt-ins are similarly situated. See *Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir.)*, cert. denied sub. nom. *Helton v. Kmart Corp., 519 U.S. 982, 136 L. Ed. 2d 332, 117 S. Ct. 435 (1996)*. This burden, "which is not heavy," may be met by detailed allegations supported by affidavits. Id. at 1097. Accord *Abrams v. General Elec. Co., 1996 U.S. Dist. LEXIS 16869*, No. 95-CV-1734(FJS), *1996* [*7] *WL 663889*, at *2 (N.D.N.Y. Nov. 4, 1996) (holding that plaintiffs must come forward with "some identifiable factual nexus which binds the named plaintiffs and potential class members together.").

The Court thus turns to the signed declarations put forward by the Plaintiffs. According to these declarations, Management Assistants begin their careers with Enterprise as Management Trainees. Enterprise considers Management Trainees "non-exempt" employees and pays them overtime pay. n2 Their duties consist of: writing car "rental tickets"; picking up rental car customers; making reservations to meet with rental car customers; selling customer options and explaining rental policies; handling telephone and walk-in rental customers; arranging for billing and length of car rentals; handling cash deposits; taking credit information and obtaining approvals; verifying customers' return dates; checking in rental cars when returned; settling customer complaints; making limited sales calls; and arranging for and assisting with fleet maintenance. n3

n2 (Abraham Decl. P 3; Anderson Decl. P 3; Bishop Decl. P 3; Boyd Decl. P 3; Brown Decl. P 3; Browning Decl. P 3; Cuthbertson Decl. P 3; Dailey Decl. P 3; Daniels Decl. P 3; Dilorenzo Decl. P 3; Elmer Decl. P 3; Garces Decl. P 3; Golson Decl. P 3; Graham Decl. P 3; Groper Decl. P 3; Hildebrand Decl. P 3; Hughes Decl. P 3; Huszcza Decl. P 3; Imai Decl. P 3; Isaacson Decl. P 3; Jackson Decl. P 3; James Decl. P 3; Kelley Decl. P 3; Keto Decl. P 3; Kijac Decl. P 3; Kubala Decl. P 3; LaFrentz Decl. P 3; Low Decl. P 3; Morrison Decl. P 3; Neifert Decl. P 3; Paddock Decl. P 3; Patin Decl. P 3; Parisi Decl. P 3; Repass Decl. P 3; Richard Decl. P 3; Ridlon Decl. P 3; Rowland Decl. P 3; Saad Decl. P 3; Salmon Decl. P 3; Sandelin Decl. P 3; Schwanter

1998 U.S. Dist. LEXIS 13131, *

Decl. P 3; Siegal Decl. P 3; Stark Decl. P 3; Stead Decl. P 3; Strong Decl. P 3; Taylor Decl. P 3; Tillery Decl. P 3; Tracey Decl. P 3; Ubinas Decl. P 3; Walker Decl. P 3; Ware Decl. P 3; Wilson Decl. P 3.)

[*8]

n3 (Harrison Decl. P 4; Francis Decl. P 4; Douglas Decl. P 4; Keith Decl. P 4; Kirwin Decl. P 4; Mourer Decl. P 4; Rissell Decl. P 4; Luther Decl. P 5; Fried Decl. P 4; Abraham Decl. P 4; Anderson Decl. P 4; Bise Decl. P 4; Bishop Decl. P 4; Boyd Decl. P 3; Brown Decl. P 4; Browning Decl. P 4; Cuthbertson Decl. P 4; Dailey Decl. P 4; Daniels Decl. P 4; Dilorenzo Decl. P 4; Elmer Decl. P 4; Garces Decl. P 4; Golson Decl. P 4; Graham Decl. P 4; Groper Decl. P 4; Hildebrand Decl. P 4; Hughes Decl. P 4; Huszcza Decl. P 4; Imai Decl. P 4; Isaacson Decl. P 4; Jackson Decl. P 4; James Decl. P 4; Kelley Decl. P 4; Keto Decl. P 4; Kijac Decl. P 4; Kubala Decl. P 4; La-Frentz Decl. P 4; Low Decl. P 4; Morrison Decl. P 4; Neifert Decl. P 4; Paddock Decl. P 4; Patin Decl. P 4; Parisi Decl. P 4; Repass Decl. P 4; Richard Decl. P 4; Ridlon Decl. P 4; Rowland Decl. P 4; Saad Decl. P 4; Salmon Decl. P 4; Sandelin Decl. P 4; Schwanter Decl. P 4; Siegal Decl. P 4; Stark Decl. P 4; Stead Decl. P 4; Strong Decl. P 4; Taylor Decl. P 4; Tillery Decl. P 4; Tracey Decl. P 4; Ubinas Decl. P 4; Walker Decl. P 4; Ware Decl. P 4; Wilson Decl. P 4.)

[*9]

According to the Plaintiffs' declarations, Management Assistants, who do not receive overtime compensation, perform essentially the same tasks. n4 Management Assistants have limited marketing functions, consisting largely of plying claims adjusters and body shops with donuts and bagels, then returning to report to the Branch Manager. n5 A Management Assistant may "compromise" a contract (that is, allow a customer one or two days worth of free rental), but that discretion is circumscribed and its exercise reviewed by the Branch Manager. n6 Assistant Managers do not hire employees, fire employees, or conduct interviews. n7 According to the declarations, Assistant Managers work in excess of fifty n8, fifty-five n9, and sixty n10 hours per week.

n4 (Harrison Decl. P 7; Francis Decl. P 7; Douglas Decl. P 7; Keith Decl. P 7; Kirwin Decl. P 8; Maurer Dep. PP 7, 8; Rissell Decl. PP 7, 8; Luther Decl. PP 8, 9, 10; Anderson Supp. Decl.

PP 3, 4, 7; Hildebrand Supp. Decl. PP 3, 4, 7; Hughes Supp. Decl. PP 3, 4, 7; Huszcza Supp. Decl. PP 3, 4, 7; Kijac Supp. Decl. PP 3, 4, 7; Kowal Supp. Decl. PP 3, 4, 7; Keto Supp. Decl. PP 3, 4, 7; Tillery Supp. Decl. PP 3, 4, 7; Groper Supp. Decl. PP 3, 4, 7; Siegal Supp. Decl. PP 3, 4, 7; Bise Supp. Decl. PP 3, 4, 7; Fried Decl. P 7; Abraham Decl. P 7; Anderson Decl. P 7; Bishop Decl. P 7; Boyd Decl. P 7; Brown Decl. P 7; Cuthbertson Decl. P 7; Dailey Decl. P 7; Daniels Decl. P 7; Dilorenzo Decl. P 7; Elmer Decl. P 7; Garces Decl. P 7; Golson Decl. P 7; Graham Decl. P 7; Imai Decl. P 7; Isaacson Decl. P 7; Jackson Decl. P 7; James Decl. P 7; Kelley Decl. P 7; Kubala Decl. P 7; LaFrentz Decl. P 7; Low Decl. P 7; Morrison Decl. P 7; Neifert Decl. P 7; Paddock Decl. P 7; Patin Decl. P 7; Parisi Decl. P 7; Repass Decl. P 7; Richard Decl. P 7; Ridlon Decl. P 7; Rowland Decl. P 7; Saad Decl. P 7; Salmon Decl. P 7; Sandelin Decl. P 7; Schwanter Decl. P 7; Siegal Decl. P 7; Stark Decl. P 7; Stead Decl. P 7; Strong Decl. P 7; Taylor Decl. P 7; Tillery Decl. P 7; Tracey Decl. P 7; Ubinas Decl. P 7; Walker Decl. P 7; Ware Decl. P 7; Wilson Decl. P 7.)

[*10]

n5 (Harrison Decl. P 8; Francis Decl. P 8; Douglas Decl. P 8; Keith Decl. P 8; Kirwin Decl. P 9; Maurer Dep. P 9; Rissell Decl. P 9; Luther Decl. P 11; Fried Decl. P 4.)

n6 (Harrison Decl. P 9; Francis Decl. P 9; Douglas Decl. P 9; Keith Decl. P 9; Kirwin Decl. P 12; Maurer Dep. P 11; Rissell Decl. P 12; Luther Decl. P 13; Anderson Supp. Decl. P 6; Hildebrand Supp. Decl. P 6; Hughes Supp. Decl. P 6; Huszcza Supp. Decl. P 6; Kijac Supp. Decl. P 6; Kowal Supp. Decl. P 6; Keto Supp. Decl. P 6; Tillery Supp. Decl. P 6; Groper Supp. Decl. P 6; Siegal Supp. Decl. P 6; Bise Supp. Decl. P 6.)

n7 (Harrison Decl. P 8; Francis Decl. P 8; Douglas Decl. P 8; Keith Decl. P 8; Kirwin Decl. P 11; Maurer Dep. P 10; Rissell Decl. P 11; Luther Decl. P 12; Fried Decl. P 8; Abraham Decl. P 8; Anderson Decl. P 8; Bise Decl. P 8; Bishop Decl. P 8; Boyd Decl. P 8; Brown Decl. P 8; Browning Decl. P 8; Cuthbertson Decl. P 8; Dailey Decl. P 8; Daniels Decl. P 8; Dilorenzo Decl. P 8; Elmer Decl. P 8; Garces Decl. P 8; Golson Decl. P 8; Graham Decl. P 8; Groper Decl. P 8; Hildebrand Decl. P 8; Hughes Decl. P

8; Huszcza Decl. P 8; Imai Decl. P 8; Isaacson Decl. P 8; Jackson Decl. P 8; James Decl. P 8; Kelley Decl. P 8; Keto Decl. P 8; Kijac Decl. P 8; Kubala Decl. P 8; LaFrentz Decl. P 8; Low Decl. P 8; Morrison Decl. P 8; Neifert Decl. P 8; Paddock Decl. P 8; Patin Decl. P 8; Parisi Decl. P 8; Repass Decl. P 8; Richard Decl. P 8; Ridlon Decl. P 8; Rowland Decl. P 8; Saad Decl. P 8; Salmon Decl. P 8; Sandelin Decl. P 8; Schwanter Decl. P 8; Siegal Decl. P 8; Stark Decl. P 8; Stead Decl. P 8; Strong Decl. P 8; Taylor Decl. P 8; Tillery Decl. P 8; Tracey Decl. P 8; Ubinas Decl. P 8; Walker Decl. P 8; Ware Decl. P 8; Wilson Decl. P 8.)

[*11]

n8 (Brown Decl. P 6; Browning Decl. P 6; Cuthbertson Decl. P 6; Dailey Decl. P 6; Dilorenzo Decl. P 6; Garces Decl. P 6; Groper Decl. P 6; Huszcza Decl. P 6; Isaacson Decl. P 6; Jackson Decl. P 6; Kelley Decl. P 6; Kubala Decl. P 6; LaFrentz Decl. P 6; Low Decl. P 6; Morrison Decl. P 6; Neifert Decl. P 6; Paddock Decl. P 6; Parisi Decl. P 6; Ridlon Decl. P 6; Saad Decl. P 6; Stark Decl. P 6; Taylor Decl. P 6; Tillery Decl. P 6; Ubinas Decl. P 6.)

n9 (Anderson Decl. P 6; Bise Decl. P 4; Bishop Decl. P 6; Boyd Decl. P 6; Daniels Decl. P 6; Elmer Decl. P 6; Golson Decl. P 6; Graham Decl. P 6; James Decl. P 6; Repass Decl. P 6; Rowland Decl. P 6; Schwanter Decl. P 6; Siegal Decl. P 6; Stead Decl. P 6; Taylor Decl. P 6; Tracey Decl. P 6; Walker Decl. P 6.)

n10 (Hildebrand Decl. P 6; Hughes Decl. P 6; Imai Decl. P 6; Keto Decl. P 6; Kijac Decl. P 6; Patin Decl. P 6; Richard Decl. P 6; Salmon Decl. P 6; Sandelin Decl. P 6; Strong Decl. P 6; Wilson Decl. P 8.)

The Plaintiffs' declarations suggest that Management Assistants for Enterprise perform the same kinds of tasks, under the same kinds [*12] of restrictions, and under the same pay provisions. They thus supply an adequate basis from which to conclude, for preliminary purposes, that members of a potential class of Management Assistants would be "similarly situated" with respect to their job requirements and with regards to their pay provisions. See *Dybach, 942 F.2d at 1567;* see also *Garner, 802 F. Supp. at 422* (holding that evidence of forty similarly situated potential plaintiffs was sufficient); cf.

*Haynes, 696 F.2d at 888-89* (holding that, due to utter dearth of evidence that potential plaintiffs were similarly situated, district court correctly declined to exercise discretion to facilitate notice).

It is Defendants' position that the range of duties performed by Management Assistants is too wide and too varied for the members of such a class to be "similarly situated." It would seem, though, that Defendants demand too much of the standard, at least at this stage. [HN3] At the notice stage, the burden on plaintiffs to show that they and potential opt-ins are similarly situated is a "lenient" one. *Mooney, 54 F.3d at 1213-14.* Accord *Hoffman, 982 F. Supp. at 261* ("The burden on the plaintiffs is not a stringent [*13] one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'"). Plaintiffs need only show a similarity of duties and pay provisions, not an identity thereof. See *Grayson, 79 F.3d at 1096.* Accord *Tucker, 872 F. Supp. at 947* ("To be similarly situated courts have held positions need not be identical, but similar.").

Defendants also argue that the Management Assistants' duties include managerial, or administrative ones that exempt the position from FLSA's purview. Discovery may prove this to be the case. Indeed, discovery may prove that Plaintiffs and the potential opt-ins are not similarly situated after all, in which case Defendants may move to "decertify" the class of Management Assistants, and the Court may dismiss the opt-in plaintiffs without prejudice. See *Mooney, 54 F.3d at 1213-14.* Nonetheless, [HN4] the fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs are not, after all, "similarly situated" does not work against the original decision to facilitate notice. See *Schwed v. General Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995)* ("Even where later discovery proves the [*14] putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."); *Krueger v. New York Tel. Co., 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058 at *2 (S.D.N.Y. July 21, 1993)* ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case."). Likewise, the possibly exempt status of the Management Assistants is more properly raised at summary judgment than at the notice stage.

As it stands, then, this action will proceed as a representative one through the discovery stage. See *Mooney, 54 F.3d at 1213-14.* In order to further the judicial goal of avoiding a multiplicity of duplicative suits and effecting the expeditious resolution of this action, see *Hoffmann-La Roche, 493 U.S. at 172; Hipp v. Liberty Nat'l Life Ins. Co., 164 F.R.D. 574, 576 (M.D. Fla. 1996),* this

1998 U.S. Dist. LEXIS 13131, *

Court will therefore grant Plaintiffs' motion to facilitate notice.

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiffs' Motion to Facilitate [*15] Notice (Doc. No. 33, filed March 27, 1998) is GRANTED;

(2) Defendants shall furnish to Counsel for Plaintiffs all discovery necessary to identify and locate the proposed class of Management Assistants within twenty (20) days of this order;

(3) Plaintiffs' proposed, revised notice (Doc. No. 52, Ex. B) is sufficient and may be sent to similarly situated potential plaintiffs;

(4) There is to be no other communication between Plaintiffs or their Counsel and these individuals;

(5) Parties who choose to opt-in as Plaintiffs must file written consent with this Court within 120 days of this order.

**DONE AND ORDERED** at Tampa, Florida, this 1st day of July, 1998.

SUSAN C. BUCKLEW

United States District Judge